**KELLEY DRYE & WARREN LLP**

A LIMITED LIABILITY PARTNERSHIP

101 PARK AVENUE

NEW YORK, NEW YORK 10178

WASHINGTON, DC
TYSONS CORNER, VA
CHICAGO, IL
STAMFORD, CT
PARSIPPANY, NJ

BRUSSELS, BELGIUM

AFFILIATE OFFICES
MUMBAI, INDIA

(212) 808-7800

FACSIMILE
(212) 808-7897

www.kelleydrye.com

JEAN Y. PARK

DIRECT LINE: (212) 808-5019

EMAIL: jpark@kelleydrye.com

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/14/09

January 12, 2009

**BY HAND DELIVERY**

Honorable Theodore H. Katz
United States Magistrate Judge
United States District Court
 for the Southern District of New York
500 Pearl Street, Room 1660
New York, New York 10007

MEMO ENDORSED

RECEIVED
JAN 13 2009
CHAMBERS OF
THEODORE H. KATZ
US MAGISTRATE JUDGE

Re:  Lindner v. American Express Corporation & Qing Lin
     Civil Action No. 06-3834 (JGK-THK)

Dear Judge Katz:

This comprises Defendants' formal application for a protective order, pursuant to Rule 26(c) of the Federal Rules: (i) barring plaintiff pro se, Peter Lindner, from videotaping the depositions of Defendant Qing Lin and American Express' in-house counsel, Jason K. Brown, Esq., and (ii) limiting the scope of plaintiff's examination to issues relevant to his pending claims of retaliation, breach of settlement agreement and tortious interference with prospective employment.

Mr. Lin's deposition is currently scheduled to take place at the Courthouse on January 15, 2009. Mr. Brown's deposition is currently scheduled to take place at the Courthouse on January 22, 2009.

**Background**

Mr. Lindner is a former employee of American Express who was discharged in November of 1998. He claims that Defendant Qing Lin, a Senior Vice President at American Express and the then-head of plaintiff's department, sexually harassed him by grabbing his bicep when talking to him and then retaliated against plaintiff by setting him up to be discharged by another American Express employee. Plaintiff filed a charge of discrimination with the EEOC in September of 1999 complaining about this alleged harassment and retaliation (the "EEOC Charge"). In December of 1999, Lindner also commenced an action in New York civil court against American Express, Ash Gupta and Richard Tambor, claiming that Messrs. Gupta and Tambor gave him a negative reference (the "1999 Civil Court Action").

In June of 2000, the EEOC Charge and the 1999 Civil Court Action were settled pursuant to a settlement agreement and release executed by plaintiff, American Express counsel and Messrs. Gupta and Tambor (the "June 2000 Agreement"). The June 2000 Agreement contains two (2) provisions relevant to the instant action:

COPIES MAILED
TO COUNSEL OF RECORD ON  1/14/09

**KELLEY DRYE & WARREN LLP**

Honorable Theodore H. Katz
January 12, 2009
Page Two

1. The Company...will disclose only Mr. Lindner's dates of employment, positions held and final salary in response to any inquiries or requests for references regarding Mr. Lindner. (June 2000 Agreement, paragraph 12.)

2. The Company agrees to instructed and direct the following Company employees not to disclose any information regarding Mr. Lindner's employment or termination of employment from the Company to any person outside of the Company and to direct all requests for references or inquiries received by such employees regarding Mr. Lindner to the appropriate human resources individual(s):...Qing Lin. (June 2000 Agreement, paragraph 13.)

## Plaintiff's Claims

Plaintiff's claims of retaliation, breach of June 2000 Agreement and tortious interference share the same, discrete nucleus of operative facts. He claims that in April or May of 2005, Mr. Lin gave plaintiff's prospective employer, Fischer Jordan, a negative reference, telling Boaz Salik of Fischer Jordan that:

- Plaintiff "did not have the right [work] ethic" to work at Amex;
- Plaintiff "did not fit the culture" at Amex, and
- He wasn't sure whether "Peter can work here."

Mr. Lindner further alleges that Mr. Lin took the additional measure of causing American Express to cancel a project with Fischer Jordan in order to intimidate Fischer Jordan from hiring him.[1]

## Grounds for Defendants' Request for a Protective Order

Rule 26(c) of the Federal Rules provides that the Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R.Civ. P. 26(c)(1). Rule 26(c) also provides that the Court may, for good cause, forbid inquiry into certain matters or limit the scope of disclosure or discovery to certain matters. Id. at 26(c)(1)(D). Good, if not compelling, cause exists here to: (i) bar plaintiff from videotaping of the depositions of Messrs. Lin and Brown, and (ii) limit the scope of Mr. Lin's deposition to his alleged negative reference to Fischer Jordan and Citigroup in 2005, and Mr. Brown's deposition to his 2005 and 2006 investigations of plaintiff's complaints concerning Mr. Lin's alleged negative reference to Fischer Jordan.

Mr. Lindner has made clear that he has no legitimate interest in videotaping these depositions. In his January 6th "Appeal of Oral Order of Magistrate Judge on Videotaping." Mr. Lindner stated his intent to:

---

[1] While not alleged in the Amended Complaint, Mr. Lindner also contends that Mr. Lin may have interfered with his attempt to secure employment with Citigroup in 2005.

NY01/PARKJE/1320337.1

**KELLEY DRYE & WARREN LLP**

Honorable Theodore H. Katz
January 12, 2009
Page Three

> "disseminate [the videotapes] without prior permission of Amex or of the Court, via any/all/no media, including the internet, you-tube (youtube.com), television, newspapers, subject to [his] control."

Mr. Lindner's stated intent is consistent with his behavior throughout this litigation to do whatever he can to embarrass and harm Messrs. Lin and Brown. Mr. Lindner is on a campaign to smear the character and reputations of these private citizens. He has testified at deposition that he "hates" Mr. Lin and blames Mr. Lin for ruining his life. He has further stated, "I would love to have him fired from American Express. I would like to harm him incredibly by having him fired from his job." In his communications leading up to the instant action, Mr. Lindner repeatedly demanded that Mr. Lin be fired.

Mr. Lindner's opinion of Mr. Brown is equally vituperative. He has accused Mr. Brown of engaging in a "cover up" and of violating the Company's Code of Conduct. He threatened Mr. Brown that he [Mr. Brown] was "being watched" and demanded the contact information for American Express' General Counsel, Louise Parent, in order to inform her of Mr. Brown's alleged misconduct.

Mr. Lindner has been similarly inappropriate in his behavior toward the undersigned. In addition to accusing me of "sexually harassing" him with my questioning at his deposition, Mr. Lindner attempted to contact the Chairman of my firm to lodge a complaint against me and repeatedly badgered several of my support staff.

Mr. Lindner's stated belief is that this is a "free speech case" and that he should have the right to publish all materials relating to this action, including videotapes, on the Internet. He has stated that he wishes to fight American Express in the "court of public opinion" and continues to post materials about this on the Internet. (See attached samples.)

Under similar circumstances, Judge Holwell barred the pro se plaintiff from videotaping the deposition of the defendant in Posr v. Roadarmel, 466 F.Supp.2d 527, 529 (S.D.N.Y. 2006), on the ground that there was "significant risk that plaintiff would misuse the videotape." Such risk exists here and an order restraining Mr. Lindner from publishing any videotapes would be insufficient. Mr. Lindner has violated the Court's directives with impunity on prior occasion, repeatedly communicating directly with American Express in violation of this Court's express orders to the contrary. As recently as December 30, 2008, Mr. Lindner sent an email to Mr. Stephen Norman, Secretary of American Express Corporation, soliciting information as to when he (Mr. Norman) first heard from plaintiff regarding Qing Lin's alleged negative reference. I believe Mr. Lindner engaged in this communication in a continuing effort to implicated Mr. Norman in this action.

Moreover, Mr. Lindner's chosen videographer – his personal friend, Robert Pine – is wholly unsuitable and does not qualify as an "independent videotaping personnel" as specified in Your Honor's December 23, 2008 Order. Judge Rakoff ruled as much, noting on December 29, 2008, that the difficulties in conducting an efficient and appropriate deposition of

**KELLEY DRYE & WARREN LLP**

Honorable Theodore H. Katz
January 12, 2009
Page Four

Defendants would not be alleviated by "videotaping being undertaken by someone who doesn't do it as an independent business, but simply as a friend of the plaintiff."

Defendants have no objection to Mr. Lindner audiotaping these depositions provided that an order issue requiring:

(i) the designation of a professional audio technician to make one copy of each of the audiotapes for each of the parties;

(ii) the submission of the original audiotapes to the Court for filing under seal; and

(iii) no publication of the audiotapes to anyone other than the Court, the jury hearing the case (if applicable) and any person in attendance at the trial.

Finally, Defendants respectfully request that the Court issue an order limiting the scope of plaintiff's examination of Messrs. Lin and Brown. Mr. Lindner is operating under the misapprehension that there is a parity between the scope of questions asked of him at deposition and those he is entitled to ask of Messrs. Lin and Brown. He is wrong. The only legitimate line of questioning that plaintiff may have with respect to Mr. Lin is one that concerns, refers or relates to Mr. Lin's alleged negative reference to Fischer Jordan and Citigroup in 2005, and his alleged interference with plaintiff's ability to secure employment with these employers. The only legitimate line of questioning that plaintiff may have with respect to Mr. Brown is one that concerns, refers or relates to Mr. Brown's 2005 and 2006 investigations of plaintiff's complaints concerning Mr. Lin's alleged negative reference to Fischer Jordan.

We thank Your Honor for his kind consideration of this important matter.

Respectfully submitted,

Jean Y. Park

Enclosures
cc: Peter Lindner (by email)

**MEMO ENDORSED**

Defendants' application for a protective order is denied in light of Plaintiff's commitment to have the depositions transcribed by a certified court reporter and videotaped by an independent, professional videotaper. Upon completion of the depositions, the videotapes will be maintained by the Court for use at the trial, if appropriate. They have no other legitimate use.

Plaintiff is advised that he is to limit his questioning of the witnesses to matters relevant to the Complaint. The depositions will not extend beyond the time-period provided in the Federal Rules. So ordered.
1/14/09
Theo. H. [Katz]
USMJ

NY01/PARKJE/1329337.1