**KELLEY DRYE & WARREN** LLP

A LIMITED LIABILITY PARTNERSHIP

**101 PARK AVENUE**

**NEW YORK, NEW YORK 10178**

(212) 808-7800

WASHINGTON, DC
TYSONS CORNER, VA
CHICAGO, IL
STAMFORD, CT
PARSIPPANY, NJ

BRUSSELS, BELGIUM

AFFILIATE OFFICES
MUMBAI, INDIA

FACSIMILE
(212) 808-7897
www.kelleydrye.com

JEAN Y. PARK
DIRECT LINE: (212) 808-5019
EMAIL: jpark@kelleydrye.com

April 7, 2009

**BY FEDERAL EXPRESS**

Honorable Theodore H. Katz
United States Magistrate Judge
United States District Court
 for the Southern District of New York
500 Pearl Street, Room 1660
New York, New York 10007

> Re: Lindner v. American Express Corporation & Qing Lin
>     Civil Action No. 06-3834 (JGK-THK)

Dear Judge Katz:

This comprises Defendants' response to plaintiff's "Motion to Compel Production of Defendants [sic] Documents Mentioned," dated March 24, 2009 (hereinafter, "Motion to Compel Document Production")[1], and "Motion to Compel Deposition Due to Defendants [sic] Refusal to Obey Court Order," dated March 31, 2009 (hereinafter, "Motion to Compel Depositions") (collectively, "Motions to Compel").

For the reasons detailed below, we respectfully request that both of these applications be denied as frivolous, and that, pursuant to Rule 37(a)(5)(B) of the Federal Rules, Defendants be awarded costs and fees in the amount of $7,150 for being forced to respond to these Motions to Compel. Mr. Lindner has been allowed to squander the resources of this Court and needlessly compound defense costs with virtual impunity.

---

[1] While styled a motion to compel document production, plaintiff inserts additional requests for discovery, including renewed requests for leave to take a 30(b)(6) deposition and for an extension of time to complete discovery. These requests are also addressed herein.

**KELLEY DRYE & WARREN** LLP

Honorable Theodore H. Katz
April 7, 2009
Page Two

I.     **MOTION TO COMPEL DOCUMENT PRODUCTION**

     A.     <u>**Jason Brown's E-mails and Deposition Testimony**</u>

Mr. Lindner's Motion to Compel Document Production is completely inchoate on this point. There are no non-privileged e-mails in Jason Brown's custody, possession or control that concern, refer or relate to plaintiff's claims and the defenses in this action that have not already been produced. Indeed, when asked at deposition whether he had conducted a search for e-mails relating to plaintiff, Mr. Brown testified as follows:

> Q:     Did you do a search for e-mails related to me?
> A:     Yes.
> Q:     And what did you do with them?
> A:     Gave them to my lawyer.

(<u>See</u> Memorandum of Law in Support of Motion to Compel Document Production, Appendix G at page 31.)

I, in turn, produced to plaintiff all of Jason Brown's e-mail communications that were addressed to, received from and/or referenced plaintiff that also concerned, referred or related to the claims and defenses in this action. Excluded from this production were e-mail communications between myself and Mr. Brown concerning this lawsuit. Also excluded were e-mail communications concerning Mr. Lindner's various shareholder proposals and attempts to secure a seat on American Express' Board of Directors.

There is nothing contradictory between this representation and the one I made to the Court during the parties' December 11, 2008 conference. At the December 11th conference, I stated that there were no internal communications between American Express concerning plaintiff over which we were asserting a claim of privilege. I went on to say, with the Court's concurrence, that communications between myself and American Express after plaintiff commenced this action are not subject to listing in a privilege log. (<u>See</u> transcript pages 3-5 from the December 11th conference, copies of which are annexed hereto as "**Exhibit A**".)

**KELLEY DRYE & WARREN** LLP

Honorable Theodore H. Katz
April 7, 2009
Page Three

The Motion to Compel Document Production fails to set forth a single document, record, or communication identified by Mr. Brown that is subject to disclosure. Instead, plaintiff purports to demand production of the following privileged communications:

- e-mail communications between Mr. Brown and Kelley Drye, including, by way of example, production of a communication from me to Mr. Brown concerning whether his appearance at the parties' March 29, 2007 settlement conference was as a "lawyer" or an "executive."

- "a list of all [Mr. Brown's] communications with Ms. Park or any other lawyer, and indicate which are privileged and why."

- whether Mr. Brown and Harold Schwartz, in-house counsel at American Express, "discussed [plaintiff's] case."

(See Motion to Compel Document Production at pages 4, 7-8.)

None of these types of communications is subject to production.

Nor, for that matter, are such communications appropriate fodder for exploration at deposition, which is what Mr. Lindner repeatedly and improperly attempted to do at Mr. Brown's deposition. My directions to Mr. Brown not to respond to these types of questions were warranted and plaintiff's submission only underscores the propriety of my directions. As the Court can see, plaintiff's questions purported to elicit: (i) privileged communications between myself and Mr. Brown, and/or (ii) testimony concerning Mr. Brown's assessment, as in-house counsel to American Express, of Qing Lin's deposition testimony. (See Motion to Compel Document Production at pages 7-8; Appendices B at pages 14-23.)

At other junctures, I directed Mr. Brown not to respond to plaintiff's questions because they were both harassing and wholly violative of Your Honor's January 14, 2009 memo-endorsed Order, which constrained plaintiff to limit his questioning to matters relevant to the complaint. (A copy of the Court's January 14th memo-endorsed Order [Docket No. 120] is annexed hereto as "**Exhibit B**".)

**KELLEY DRYE & WARREN** LLP

Honorable Theodore H. Katz
April 7, 2009
Page Four

    For instance, pages 16 and 17 of plaintiff's memorandum of law in support of his Motion to Compel Document Production reveal plaintiff's palpably improper line of questioning concerning what discussions Mr. Brown and I had on "nonattorney-client subjects" and what the attorney-client privilege means. The exchange set forth in these pages was preceded by several questions to Mr. Brown concerning how long he has known me and how long I had been at Kelley Drye. (Annexed hereto as "**Exhibit C**" are transcript pages 35 through 37 from Jason Brown's deposition.) Pages 18 through 24 of plaintiff's memorandum of law in support of his Motion to Compel Document Production, in turn, reveal a 12-minute harangue of Mr. Brown concerning the import of the phrase "Jury trial demanded" on the face of the Complaint. Appendix C to plaintiff's memorandum of law reveals plaintiff's questions to Mr. Brown concerning the difference between local, federal and state courts and whether dropping a gum wrapped on the sidewalk would be a violation presented in federal court. (See Appendix C at page 25 of plaintiff's memorandum of law in support of Motion to Compel Document Production.)

    It was questioning of this ilk that caused the Court to finally order the termination of Mr. Brown's deposition at 6:00 pm. Plaintiff's presentation of this same line of questioning in support of his Motion to Compel Document Production is, put bluntly, staggering. It compels the award of sanctions against plaintiff pursuant to F.R.C.P. 37(a)(5)(B).

  B. **Qing Lin's E-mails, Other Documents and Deposition Testimony**

    Plaintiff's Motion to Compel Document Production is similarly untenable with respect to Defendant Qing Lin. Construed liberally, plaintiff's application appears to seek the production and/or identification of e-mails Mr. Lin sent to me (Motion to Compel Document Production at pages 6-7), as well as production of the following additional records/information:

    (i) Mr. Lin's resume when he applied to American Express **[in 1990]**;
    (ii) Log of messages Mr. Lin sent to Fisher [sic] Jordan;
    (iii) Organization charts **[showing that Mr. Lin and Richard Tambor reported to Ash Gupta]** from 1998/1999;

**KELLEY DRYE & WARREN** LLP

Honorable Theodore H. Katz
April 7, 2009
Page Five

 (iv) Any documents that Mr. Lin has made reference to that have not been produced;

 (v) Documents relating to Fisher [sic] Jordan contracts;

 (vi) Tessa Alert's phone number **[Ms. Alert is Mr. Lin's administrative assistant]**;

 (vii) Tessa Alert's schedule;

 (viii) Name of group who checked Mr. Lin's calendar;

 (ix) Personnel file for Qing Lin;

 (x) Documents that would list who instructed whom **[concerning the June 2000 Settlement Agreement]**;

 (xi) Document that shows who instructed Ash Gupta **[concerning his obligations under the June 2000 Settlement Agreement]**;

 (xii) Documents on Gillian Clements **[concerning Code of Conduct violations reported to Clements in 2005]**, and

 (xiii) Document from Jason Brown **[an April 23, 2006 email from Jason Brown to Peter Lindner, marked as Plaintiff's Exhibit 6 at Mr. Lin's deposition.]** .

(See Appendix E to plaintiff's memorandum of law in support of the Motion to Compel Document Production). (Bold text represents explanatory amplification.)

 There is no basis for the production of any e-mails that Qing Lin sent to me, as his attorney in this action. These communications are privileged and exempt from production.

 Similarly insupportable are plaintiff's demands for supplemental production, which revisit demands previously made and rejected by the Court or purport to propound new discovery requests in contravention of three (3) Court Orders.

 1. <u>Demands previously made and rejected</u>:  Qing Lin's personnel file is not subject to production. The Court denied plaintiff's motion to compel this production by Order, dated May 12, 2008 [Docket No. 70].

 2. <u>New (and improper) demands</u>:  By Orders, dated May 12 and 22 and October 31, 2008 [Docket Nos. 70, 74 and 89], the Court barred plaintiff from issuing any new

**KELLEY DRYE & WARREN** LLP

Honorable Theodore H. Katz
April 7, 2009
Page Six

discovery requests. As of October 31, 2008, Defendants had been forced to respond to three (3) different sets of document demands and two (2) sets of interrogatories from plaintiff's attorneys (Thomas Luz and Kenneth Richardson). Defendants had also been forced to respond to two (2) motions to compel, exclusive of plaintiff's myriad pro se motions filed thereafter.

Accordingly, Mr. Lindner's demand for the production of all of the following documents should be denied as both untimely and improper: (i) Mr. Lin's resume when he applied to American Express (in 1990); (ii) organizational charts from 1998/1999; (iii) the telephone number and schedule of Tessa Alert (Mr. Lin's administrative assistant); (iv) records of Code of Conduct violations from Gillian Clement (Mr. Lin's business unit's compliance officer in 2005); (v) "name of group" who checked Mr. Lin's calendar; (vi) document showing "who instructed whom" concerning the non-disclosure requirements of the June 2000 Settlement Agreement, and (vii) document that shows who instructed Ash Gupta about the requirements of the June 2000 Settlement Agreement.

Mr. Lin's 1990 resume, organizational charts going back to 1998, Code of Conduct violations and Mr. Lin's calendar administrative have no bearing on plaintiff's claim that Qing Lin violated the terms of the June 2000 Settlement Agreement by speaking with plaintiff's prospective employer, Fischer Jordan, in April of 2005. There is no fathomable basis, colorable or otherwise, for these demands. Similarly, the questions of "who instructed whom" and whether Ash Gupta was instructed about the non-disclosure requirements of the June 2000 Settlement Agreement are also irrelevant. The only allegation made in this case is that Qing Lin violated the non-disclosure provision of the Settlement Agreement by discussing plaintiff with Boaz Salik of Fischer Jordan.

3. <u>Demands to which Defendants Have Already Responded</u>: Plaintiff's remaining demands are duplicative of demands previously made by plaintiff's counsel and answered by Defendants.

Plaintiff's demand for a log of messages Mr. Lin sent to Fischer Jordan is duplicative of his February 9, 2007 and January 8, 2008 document demands, which requested,

NY01/PARKJE/1346185.2

**KELLEY DRYE & WARREN** LLP

Honorable Theodore H. Katz
April 7, 2009
Page Seven

respectively, "[d]ocuments concerning communications between any Defendant and Fischer Jordan" and "[p]rovide any and all documents or documentation of any and all communications of whatever nature by Fisher [sic] Jordan, Inc [sic], and any of its employees with any employee of defendant, including but not limited to Mr. Qing Lin that took place after June 2000 and which was of, concerning or regarding Mr. Lindner. Such documentation includes but is not limited to email, telephone records, notes, diaries, letters and any other form of documentation defendants have."

Any and all responsive documents have been produced. There are no messages sent by Mr. Lin to Fischer Jordan at any time in 2005 that concern, refer or relate in any way to Mr. Lindner.

Plaintiff's demands for documents "relating to Fisher [sic] Jordan contracts" are not only duplicative of prior document requests, they are overbroad and seek wholly irrelevant information. In his Amended Complaint, Mr. Lindner claims that American Express and Qing Lin maliciously cancelled a project with Fischer Jordan in April of 2005 in order to induce Fischer Jordan not to hire plaintiff. To that end, in his January 8, 2008 document requests, plaintiff sought production of "any and all documents or documentation of any and all communication of whatever nature of, concerning or regarding any cancelled project involving Fischer Jordan, Inc. [sic] and defendants from April 2005 to the present." Defendants responded as follows:

> *Defendants have been unable to locate any documents within its possession, custody or control that refer, reflect or relate to the cancellation of any project involving Fischer Jordan, LLC and the Company between April 2005 and December 2005.*

Qing Lin, in turn, testified at deposition that he was unaware of any projects or prospective projects that Fischer Jordan had with American Express in 2005. Mr. Lin further testified that neither he nor anyone in his group had any projects with Fischer Jordan in 2005. (Copies of transcript pages 257-258 from Qing Lin's deposition are annexed hereto as "**Exhibit D**".)

**KELLEY DRYE & WARREN** LLP

Honorable Theodore H. Katz
April 7, 2009
Page Eight

    Upon information and belief, Fischer Jordan has also produced information and/or documents to plaintiff confirming that American Express did not cancel any projects in 2005.[2]

    Finally, there is Mr. Lindner's demand for the production of an April 23, 2006 e-mail sent to him by Jason Brown, a demand inexplicably made of Qing Lin. This document was not only produced by Defendants; it was marked as an exhibit during plaintiff's deposition. Annexed hereto as "**Exhibit E**" is a copy of this April 23, 2006 e-mail.

### C. 30(b)(6) Witness Deposition

    Plaintiff's demand that American Express produce a 30(b)(6) witness for deposition has been considered and rejected by this Court. Mr. Lindner made this application on January 26, 2009 and it was squarely denied as untimely and deficient by Order, dated February 20, 2009 [Docket No. 131]. (A copy of the Court's February 20th Order is annexed hereto as "**Exhibit F**.")

### D. Request to Extend Fact Discovery

    During the December 11th conference, the Court ordered that all fact discovery needed to be completed by the end of January 2009. (A copy of transcript page 75 from the December 11th conference is annexed hereto as "**Exhibit A**.")

    There is no justification for the extension of the discovery period in this action. This case has been pending since May 1, 2006. Defendants have been subjected to a protracted discovery period of 14 months, punctuated by periods of leave granted to plaintiff by the Court to secure new counsel. Over this 14-month period, Defendants have been forced to respond to three (3) different sets of document demands propounded by plaintiff's various counsel, reproduce documents previously produced, and respond to myriad pro se applications for additional discovery from Mr. Lindner.

---

[2] Plaintiff has continued to insist that Fischer Jordan's declarations be withheld from Defendants pending some sort of motion for reconsideration.

**KELLEY DRYE & WARREN** LLP

Honorable Theodore H. Katz
April 7, 2009
Page Nine

Plaintiff's request for additional time to complete discovery should be denied. The Court has afforded this pro se plaintiff ample, if not exhaustive, opportunities to complete discovery.

## II.    MOTION TO COMPEL DEPOSITIONS

Plaintiff's motion to compel Mr. Gupta, Mr. Parauda and Mr. Rodriguez (the Company's IT representative) to provide "responsive answers" to his interrogatories or appear for deposition is meritless.

By Order, dated February 20, 2009, this Court gave express instructions concerning the permissible scope of the interrogatories plaintiff could propound. (See "**Exhibit F**.")

Messrs. Gupta, Parauda and Rodriguez responded in full and no further interrogatory responses are warranted.

### A.    Ash Gupta's Interrogatory Responses

The February 20th Order constrained plaintiff to ask Mr. Gupta about:

(i)   what measures he [Mr. Gupta] took to comply with the settlement agreement reached with Plaintiff in an earlier action, and

(ii)  any instructions he [Mr. Gupta] provided to Mr. Lin about the requirements of the settlement agreement.

None of plaintiff's interrogatories to Mr. Gupta fell within the parameters of the Court's February 20th Order, with the exception of Interrogatory No. 3, which asked Mr. Gupta to "[i]dentify and describe in detail any and all discussions you had concerning the 2000 Settlement Agreement with any American Express employee." Despite the overbroad nature of this interrogatory, Mr. Gupta responded as follows:

> *I do recall the June 2000 Settlement Agreement itself and can confirm that I reviewed and signed the Agreement.*
>
> *I cannot recall any specific decision with Qing Lin dating back to 2000 about the requirements of the June 2000 Settlement Agreement. However, this does not mean that I did not speak with Mr. Lin about these issues. Mr. Lin was reporting*

**KELLEY DRYE & WARREN LLP**

Honorable Theodore H. Katz
April 7, 2009
Page Ten

> *to me in or around June 2000 and he is referenced in the June 2000 Settlement Agreement. It would not have been unusual for me to inform Mr. Lin about the June 2000 Settlement Agreement and to advise him to not disclose any information about Mr. Lindner to anyone outside of the Company and to direct any inquiries about Mr. Lindner to Human Resources.*

(A copy of Mr. Gupta's Objections and Responses to Mr. Lindner's Interrogatories is annexed hereto as "**Exhibit G.**")

Plaintiff's claim that Mr. Gupta was required to respond to argumentative interrogatories asking Mr. Gupta whether he "agrees" that Qing Lin violated the terms of the June 2000 Settlement Agreement is insupportable. Mr. Gupta has had no involvement in the instant action, despite Mr. Lindner's repeated attempts to implicate him. Mr. Gupta's only involvement was in possibly telling Qing Lin about the June 2000 Settlement Agreement and instructing Mr. Lin not to disclose information about plaintiff to outside parties and to direct any inquiries to Human Resources. Furthermore, the February 20th Order proscribed such interrogatories.

Mr. Gupta's interrogatory responses, moreover, were timely served. By memo-endorsed Order, dated March 17, 2009 [Docket No. 140], the Court extended the time for Defendants to serve Mr. Gupta's interrogatory responses to March 23, 2009. (A copy of this March 17th memo-endorsed Order is annexed hereto as "**Exhibit H.**")

Mr. Gupta's interrogatory responses were, in fact, served on this date. (See "**Exhibit G**" - Certificate of Service annexed to Mr. Gupta's Objections and Responses to Mr. Lindner's Interrogatories).

### B.    John Parauda and Lou Rodriguez's Interrogatory Responses

Plaintiff's Motion to Compel Depositions sets forth no substantive grounds for compelling additional interrogatory responses and/or depositions of Messrs. Parauda and Rodriguez. Instead, Mr. Lindner claims that these interrogatory responses were not timely served.

KELLEY DRYE & WARREN LLP

Honorable Theodore H. Katz
April 7, 2009
Page Eleven

Mr. Lindner is wrong.

Mr. Parauda's interrogatory responses were timely served on March 23, 2009 pursuant to the Court's March 17th memo-endorsed Order. (See annexed "**Exhibit I**," which is a copy of Mr. Parauda's Objections and Responses to Mr. Lindner's Interrogatories and accompanying Certificate of Service.)

Mr. Rodriguez's time to serve his interrogatory responses was extended to March 30, 2009. Annexed as "**Exhibit J**" is a copy of the Court's memo-endorsed Order, dated March 24, 2009 [Docket No. 147], to this effect. On March 30, 2009, we served Mr. Rodriguez's interrogatory responses. A copy of Mr. Rodriguez's Objections and Responses to Mr. Lindner's Interrogatories is annexed hereto as "**Exhibit K**," along with an accompanying Certificate of Service.

### III.   CONCLUSION

For all of the foregoing reasons, we respectfully request that the Motions to Compel be denied, in their entirety, and that monetary sanctions issue against plaintiff in the amount of $7,150 to reimburse Defendants for their costs and fees in preparing this submission.

This pro se plaintiff has exhibited nothing short of contempt for this Court and its orders. In lieu of a properly-supported and substantiated motion, Mr. Lindner has seen fit to mire the docket with another set of filings that revisit matters already considered (and reconsidered) and rejected by this Court, or are, on their face, baseless and harassing.

Pursuant to F.R.C.P. 37(a)(5), Defendants are entitled to recover their costs and fees absent an affirmative showing by Mr. Lindner that his Motions to Compel are substantially justified or that other circumstances exist that would make such an award unjust. "The great operative principle of Rule 37(a)(4) [now 37(a)(5)] is that the loser pays." 8A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure*: Civil 2d § 228 at 657-58.

Mr. Lindner cannot make such a showing and a full award should issue against him. See Rahman v. The Smith & Wollensky Restaurant, Civil Action No. 06-6198, 2009 WL

**KELLEY DRYE & WARREN** LLP

Honorable Theodore H. Katz
April 7, 2009
Page Twelve

72441 (S.D.N.Y., Jan. 7, 2009) (in an employment discrimination suit, awarding the defendant $80,230.44 in costs and fees for defending against a "largely unfounded" motion to compel discovery); see also, Interactive Prods. Corp. v. A2Z Mobile Office Solutions, Inc., 326 F.3d 687, 700 (6th Cir. 2003) (affirming sanctions award against plaintiff for filing a motion to compel that was not "substantially justified").

Orders and verbal censure have had no impact on this litigant. Significant monetary sanctions are past due and amply warranted.

Respectfully submitted,

Jean Y. Park

Enclosures

cc:   Peter Lindner (by email)

NY01/PARKJE/1346185.2