# EXHIBIT A

1    investigation prior to Mr. Lindner's filing suit.

2        THE COURT:  So Mr. Lindner, are dates set for those

3    depositions?  You're ready to proceed with them?

4        MR. LINDNER:  Not quite, sir.  I want to get documents

5    so that I can talk to them knowledgeably and Ms. Park refuses

6    to give me the documents.

7        THE COURT:  I thought I ruled on all your outstanding

8    document requests.

9        MR. LINDNER:  In other words that I wouldn't be able

10   to get any documents.

11       THE COURT:  Well, there were certain documents that I

12   said you were entitled to.  I think they were produced.

13       MS. PARK:  Right, your Honor.

14       MR. LINDNER:  I wanted to get ESI, electronically

15   stored information of e-mails among the parties.

16       THE COURT:  Well, leaving aside the fact whether or

17   not that was a late or new request, as I understand it, having

18   gone through the correspondence, Ms. Park has represented that

19   whatever electronic documents existed relating to

20   communications between the parties about the management of this

21   case were produced; is that correct?

22       MS. PARK:  Correct, your Honor.

23       MR. LINDNER:  I beg to differ.

24       THE COURT:  Well --

25       MR. LINDNER:  Can we talk about that for a moment?

THE COURT: What do you want to say?

MR. LINDNER: She has not produced e-mails between the parties, in other words, between the what I call the AmEx people, which would be Qing Lin, Jason Brown, Ash Gupta, Qing's manager, and secretary of the corporation Steven Norman who authorized Jason Brown to do the investigation.

THE COURT: I don't know whether there were any, but is the response that there were no such e-mails?

MR. LINDNER: Correct.

MS. PARK: Correct, your Honor, any e-mail communications that we have that are not protected by the attorney-client privilege and pertain to this action as opposed to Mr. Lindner's run for a seat on the board of directors have been produced.

MR. LINDNER: And actually that violates FRCP in regard that she hasn't identified what the privilege in a manner sufficient that I could identify if that's valid or not.

THE COURT: Were there any privileged communications?

MS. PARK: Not within the company. Not within the company.

MR. LINDNER: So the judge just asked you were there any communications that were privileged, and so you are saying there are none within the company?

MS. PARK: Correct.

MR. LINDNER: So if none of them are privileged you're

8CBTLINC

1   saying none of them ever communicated by electronic means with
2   each other.
3           MS. PARK:  No, that's not what I said.  I said any
4   communications, internal communications, e-mail communications
5   have been produced to you.  And my initial qualifier was to the
6   extent they're not privileged.  But when Judge Katz asked me if
7   there were any privileged documents, I thought for a moment,
8   and no, in fact there are no such privileged documents.  There
9   are privileged communications between American Express and
10  myself post filing of the lawsuit.
11          THE COURT:  But that's not what is at issue.
12          I guess maybe to be direct about it, do you know
13  whether there were any communications produced or is it your
14  position there were none?
15          MS. PARK:  There were no communications among
16  Mr. Gupta, Mr. Lin, Mr. Brown and/or Mr. Norman concerning this
17  case other than those that have already been produced.
18          MR. LINDNER:  You're saying -- since you said there
19  are no privileged, you're saying there are no documents from
20  Qing Lin that --
21          THE COURT:  There were some documents produced, it may
22  not have been e-mails.
23          MS. PARK:  There were e-mails.  I produced whatever
24  e-mails that exist have already been produced.
25          MR. LINDNER:  If you have they were like on the order

8CBTLINC

1  dates on which the depositions have been scheduled, so you'll
2  work that out.
3          MS. PARK:  Sure, your Honor.
4          THE COURT:  And everything is to be completed by the
5  end of January.  And I'll wait to hear from Ms. Park about
6  whether American Express is willing to pursue settlement
7  discussions.
8          MR. LINDNER:  And I did request a stay on the entire
9  schedule while the motions for sanctions --
10         THE COURT:  I'm not staying anything.  We want to get
11 through this.
12         MS. PARK:  So you requested a stay from Judge Koeltl?
13         MR. LINDNER:  I'm not sure.  Probably, yes.  But I
14 guess you're going to respond to that, so we'll hear from that.
15         THE COURT:  Have a nice holiday.
16         MR. LINDNER:  Thank you.
17         MS. PARK:  Thank you, Judge.
18                              o0o
19
20
21
22
23
24
25

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300