USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _1_|_11_|_10_

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

PETER W. LINDNER,

                    Plaintiff,                    06 Civ. 3834 (JGK)

        - against -                               MEMORANDUM OPINION AND
                                                  ORDER

AMERICAN EXPRESS CORP., ET AL.,

                    Defendants.

**JOHN G. KOELTL, District Judge:**

The Court has received the attached "Motion for Proposed
Appearance" in which the plaintiff seeks to represent himself
pro se in this case concerning efforts he seeks to pursue
relating to his purported desire to be nominated to the American
Express Board of Directors and to pursue a Shareholder Proposal.
He seeks to continue with his counsel for other matters in this
case but to represent himself solely with respect to the above
cited issues.

There is no right to "hybrid representation" in which the
plaintiff represents himself for some issues and has counsel for
other issues. See O'Reilly v. New York Times Co., 692 F.2d 863,
868 (2d Cir. 1982). Because the plaintiff is represented by
counsel in this case, the plaintiff's application to represent
himself for certain issues is **denied**.

It should also be noted that this litigation is about
events that occurred some years ago. It is not a vehicle to

raise new claims or issues that the plaintiff may have with

American Express.   If he wishes to raise those issues, the

proper vehicle is a new lawsuit which does not appear to be

related to the issues in this case.   The Court expresses no

opinion on any such new lawsuit.

**SO ORDERED.**

Dated:     New York, New York
           January 8, 2010

                                        John G. Koeltl
                              United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

PETER W. LINDNER,

                   Plaintiff,

      -against-

AMERICAN EXPRESS CORPORATION and
QING LIN

                 Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

THE HONORABLE USDJ KOELTL

06 Civ. 3834 (JGK-THK)

MOTION OF PROPOSED
APPEARANCE

RECEIVED
JAN 07 2010
CHAMBERS OF
JOHN G. KOELTL
U.S.D.J.

Date: Wednesday, January 6, 2010

To the Honorable USDJ Koeltl (and to the Honorable Magistrate Judge Katz[1]),

      I wish Your Honor's permission to appear before Your Honor during the month of January 2010 on the matter of my nomination to the American Express Board of Directors and of my Shareholder Proposal. It is my intent to represent myself on this issue, as my attorney Mr. Al Breud, Esq. is representing me solely on my case against Amex (EEOC, breach of contract, etc.). Specifically, Mr. Breud handles neither SEC Shareholder matters nor does he handle appeals.

      As Your Honor recalls in March 2009, one month before I was to appear at the Amex Annual Shareholder's meeting in April 2009, Your Honor noted that my request was untimely, and that Your Honor might entertain an Order to Show Cause (OSC) if it were done early, specifically in January. This OSC was predicated upon Amex's contention that my proposal was an ordinary business matter, whereas the SEC regulations (see attached letter to the Amex Nominating committee, ¶(i)(b) ) which specifically allows "socially significant [proposals], as is indicated in SEC Rule 14(a)(8) on Shareholder Proposals". Since my case is EEOC on gay discrimination and sexual harassment and retaliation, it thus falls under the specific category of "significant social policy issues (e.g., significant discrimination matters)".

      I hereby request leave of the Court to pursue this, without regard to any obstructionism by Amex, and Ms. Park in particular, who tried to moot my April 2009 filings to the SEC and my speaking at the Greensboro, NC meeting by actively seeking to thwart my preparation by appealing to the honorable Magistrate Judge Katz a few days before I was to give my proposal. Additionally, I note that my and Mr. Breud's requests[2] for videotape and transcript of Chief Executive Officer Ken Chenault's reply to me at the April 2009 Shareholder's meeting has not been answered, let alone given to me. Such information is required if I am to accurately quote what Mr. Chenault said to me, since it appears to me that the CEO may have made a misleading statement[3] to Shareholders which is

---

[1] This is a formal motion to USDJ Koeltl, however since some of the topics involve Orders by Magistrate Judge Katz on contact with Amex whom would have to be alerted and Order changes to his prior orders, this motion is simultaneously presented to MJ Katz. Some of those orders are on March 4, 2009; March 17, 2009; March 23, 2009; April 20, 2009; and some of these orders supersede one another.

[2] I formally requested this information from Ms. Park on Friday, May 01, 2009 4:07 PM, and this was followed up as recently as Friday, December 18, 2009 3:28 PM by Mr. Al Breud, both by email.

[3] I apologize that I have not fully researched this area, but I refer to both Mr. Chenault not qualifying his knowledge (or lack thereof) of my particular lawsuit with regard to my EEOC proposal, but also of Amex not issuing a clarification thereafter, especially in light of Mr. Qing Lin's departure from Amex about a month after Mr. Chenault's statement. Qing reported directly to Amex's Banking President Ash Gupta for about 15 years, and Mr. Gupta signed the June 2000 Amex-Lindner Contract. Qing admitted in his deposition of January 2009 to breaching ¶13 of the June 2000 Amex-Lindner Contract, which was reinforced by Jason Brown, Esq.'s deposition that month. This means that Mr. Chenault had several months to see that had the Amex Code been "working", it would not have taken 4 years to get results. In other words, Amex did not exercise reasonable care to stop Qing's retaliation, since Amex failed in its duty when I "report[ed] incidents of sexual harassment to the employer", as well as retaliation and breach of contract on EEOC claims.

"encourage the employer to implement workplace policies prohibiting sexual harassment and also to encourage employee-victims to report incidents of sexual harassment to the employer" [Boston College Law Review, Volume 42 March 2001

covered by possible SEC sanctions. I certainly would be embarrassed, if not also be unwittingly / unintentionally violating the law, if I misquoted the CEO of Amex. Ms. Park has little regard for the niceties of SEC deadlines.

Specifically, I wish Your Honor USDJ Koeltl's approval to represent myself in Court (which I have discussed with Al last night via phone, and with his concurrence) on the SEC, Shareholder Proposal, and nomination matters, both to the SEC and to the SDNY Court of Your Honor. If Your Honors (Koeltl and/or Katz) approves, I shall directly communicate with Ms. Park (either in writing, fax, email, or via phone), and shall merely copy Mr. Breud, Esq. with the documents. For this letter, I am passing it to Mr. Breud, who I'm instructing to pass on to Ms. Park, with his concurrence.

Humbly submitted,

By: _____    1/7/2010
            Peter W. Lindner    Date: Wednesday, January 06, 2010
            Plaintiff, *Pro Se*
            1 Irving Place, Apt. G-23-C
            New York, New York 10003
            Home/ Fax:   212-979-9647
            Cell:         917-207-4962

cc:   The Honorable Magistrate Judge Katz, SDNY
      Mr. Al Breud, Esq. attorney for Peter Lindner in 06cv3834, **except** for Shareholder & Appeal situations
      Ms. Jean Park, Kelley Drye & Warren LLP
**Attachment 1: Lindner letter of Tuesday, December 29, 2009 to Amex Nominating Committee, including (tentative) Shareholder Proposal** (starting on next full page, with pagination from the original)

---

Number 2, Pages 421-454, Student Publications, Scott J. Connolly , "Individual Liability Of Supervisors For Sexual Harassment Under Title VII: Courts' Reliance On The Rules Of Statutory Construction"]
http://www.bc.edu/bc_org/avp/law/lwsch/journals/bclawr/42_2/05_TXT.htm
Amex's Code of Conduct was not working— apparently contrary to what Mr. Chenault said to the Shareholders. To paraphrase Law Prof. Samuel Gross's language on the death penalty, Amex's Code may be a "moral and practical failure." In other words: morally the Code was not up to par, and practically the Code should not take 4 years and tens of thousands of dollars of an employee's money (mine) to get a simple fact established. [out of context quote lifted from "Group Gives Up Death Penalty Work",By Adam Liptak, NY Times, Published: January 4, 2010]

Qing, Mr. Gupta and Mr. Chenault may be individually liable for his actions, "as a matter of law, supervisory employees may be found individually liable under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991"
"(i) as a matter of law, supervisory employees may be found individually liable under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII"); the Americans With Disabilities Act of 1990, 42 U.S.C. §§ 12101 to 12213 ("ADA"); and analogous state statutes;"
http://www.bc.edu/bc_org/avp/law/lwsch/journals/bclawr/42_2/05_TXT.htm

Correction (or even clarification) of statements (e.g. CEO to Shareholders) has been recognized as far back as the 1950's:

       Beyond this the proxy rules simply require that solicitations must not contain misleading statements nor omit material facts necessary to make the statements made not misleading in the circumstances.  The

      rules also provide that misleading statements or omissions previously made in soliciting material must be corrected in subsequent material. Although the Commission has power to seek an injunction in the courts for the correction of misleading statements, in practice it has rarely been necessary to invoke such a drastic remedy.  The administrative processing by the staff and administrative rulings by the Commission usually result in appropriate and timely disclosures without the necessity of recourse to the courts.

[source: SEC Chairman J. Armstrong, Feb 9, 1955, "Speech before the American Society of Corporate Secretaries" (Chicago Branch), pages 3-4]
http://www.sec.gov/news/speech/1955/020955armstrong.pdf

Tuesday, December 29, 2009
Via Fax: 212-640-0135

To the Nominating Committee at American Express (Amex):

This is my annual letter[1] asking to be **listed on the Proxy for April 2010 as a nominee for the Amex Board of Directors**. I ask, some would use the word "demand", to be interviewed for that position, especially since Amex has gone to Federal Court not once (in 2007) but twice (in February 2009 also) to stop me from even communicating with Amex, its shareholders, the SEC and Secretary of the Corporation Stephen Norman. I intend to get a show cause order from USDJ Koeltl, as His Honor said last year that if I don't get **my Shareholder Proposal on the proxy this year** for 2010, I should get an order from him in January 2010. Last year I tried in March 2009, which His Honor USDJ Koeltl felt was too late.

Surely I must be a crazy person, whom Amex is trying to shield you from, or else I am a rational person whom they fear. I'd suggest the latter.

I am a bit repetitive, since I don't know what you have seen – or most likely not seen – with regard to my being on the Board. Amex is once again trying to use might rather than reason; and with reason, Amex could make itself a better place for its employees, shareholders and customers.   And, by the way, also obey US laws on discrimination.

So, yes, I would like to run for director, and yes, I have a shareholder's proposal to investigate Amex's violations of promises and laws and contracts (attached). Amex has formally admitted in Court that they have violated a written settlement agreement that Amex Banking President Ash Gupta and I signed in June 2000. We are beyond the point of "alleged violation." And worse, CEO Ken Chenault spoke to the Shareholder's Meeting in April 2009 and said that the Amex Code is working fine[2]. This may be a misleading statement, as defined by SEC regulations. The next month, Qing Lin who admitted breaching the June 2000 Amex-Lindner Contract had left Amex and his direct manager of 15 years, Ash Gupta to work for a competitor. Maybe Qing was fired, but maybe he quit with a bonus. In my case, it took 4 ½ years for the Amex Code to "work," and $45,000 in my legal bills (and counting), and Amex still has not fixed the "problem," although getting Qing to leave for his breach was a start.

I think you will find my Shareholder Proposal on a Truth Commission for Amex has a worthy public objective.

I look forward to personally meeting you, providing you information, and I hereby request your vote and your interest in my nomination for Director of American Express. But I also wish you to personally respond to this letter, and not have some proxy at the Secretary of the Corporation's office reply to me.
Sincerely yours,

Peter W. Lindner
1 Irving Place, #G-23-C
NY, NY 10003
Home/fax: 212-979-9647
cell:      917-207-4962

Attachments:
Appendix 1: Letter to Secr. of the Corp. Stephen Norman of Shareholder Proposal dated September 6, 2008
Appendix 2: Shareholder Proposal of Mr. Lindner

---

[1] I was able to speak at the April 2009 Shareholder's meeting only by getting a court order in SDNY (Southern District of NY)

[2] Amex's lawyer Ms. Jean Park at Kelley Drye & Warren LLP refused to give me the transcript and/or video of Ken's remarks.

Friday, September 19, 2008

To the Nominating Committee at American Express (Amex):

I applied two years ago to be a director, and you turned me down.

I then applied to be an American Express director via the SEC.

However, as you may (or may not know), our company went to a Federal Judge and got a court order to stop me from communicating to the SEC, from attending the shareholder's meeting and from asking a question at the shareholders' meeting.

It cost me $20,000 in legal fees to get that overturned. The higher judge (US District Judge) felt there were four criteria to stop me, and I was right (and Amex wrong) on all 4. Moreover, there was an additional reason why Amex was wrong, which was cited in his footnote.

I have $80,000 worth of voting shares in Amex, and have not sold a single share in that time. I speak to you as a fellow shareholder and as a former employee.

Given that Amex wrongly stopped me from attending the meeting, and wrongly stopped me from communicating with the SEC (actually, they asked the Judge to retract the submission to the SEC, but the SEC said it could not be done, since a submission immediately goes to computers all over the world), I ask that you both interview me personally and find out if what I am saying is true.

And I point you to document DEF000370, which Amex has, which will show you that indeed Amex violated my rights as an "employee" (title VII of the Civil Rights Act of 1964 says "employee" covers former employees also, as ruled by a unanimous 1997 Supreme Court ruling), and this was recorded by a knowledgeable Amex VP / Lawyer. Moreover, you can read the sealed transcript, both of which I cannot give you, but Amex lawyers can show you to indicate what other restrictions were made upon me, and how the Amex lawyers went so far as to break a promise to the Court (on getting a written document) in order to stop me from going to the SEC, or nominating myself.

Surely, Amex can be a better corporation than these episodes would make you believe.

And that is one of the reasons why I am running for Director of American Express. There is an inherent goodness of Amex, and too often, a few employees – and now maybe a few Vice Presidents and above – lose sight of the virtues of Amex, and do foul things that are unworthy of this firm.

Let me digress with a parallel that may be apt: When a woman is raped, the defense attorney will sometimes try to smear the woman, and ask if she had sex before marriage, if she had an abortion, and various other things that have nothing to do with the fact that she was raped. It is as if she was a less than virtuous woman, and she was asking to be raped, nay, she wanted it and it was not rape. But those questions are asked in open Court in order to embarrass the woman and make her withdraw her accusation. Such is the case at Amex, where the lead attorney in the case said she wanted to know if I had sex with any Amex employees. Whether I have had that or not, it does not mean that it allows Amex to violate a written contract signed by Ash Gupta (Amex President of Banking) and me (Peter Lindner) in June of 2000. Surely, to use the well worn phrases of fifty years ago said to Senator McCarthy:

2

"Until this moment, Senator, I think I never gauged your cruelty or recklessness...."
[When McCarthy resumed his attack, Welch cut him short:]
"Let us not assassinate this lad further, Senator.... You've done enough. Have you no sense of decency, sir, at long last? Have you left no sense of decency?""[3]

So, yes, I would like to run for director, and yes, I have a shareholder's proposal to investigate Amex's violations of promises and laws and contracts.

And I think Amex would be a better place if such things were investigated. And, by the way, it is questionable whether I would have won as Director of Amex in April 2007. But you know that Amex's dirty tactics then and now (as recently as May2008) should not be called for in a civil election nor in a Fortune 500 company.

I look forward to personally meeting you, providing you information, and I hereby request your vote and your interest in my nomination for Director of American Express.

Sincerely yours,


Peter W. Lindner
1 Irving Place, #G-23-C
NY, NY 10003
home: 212-979-9647
cell:   917-207-4962

---

[3] From http://en.wikipedia.org/wiki/Army-McCarthy_Hearings

3

## Appendix 2:  Peter Lindner's Shareholder Proposal

### NOTICE OF SHAREHOLDER PROPOSAL

To:
Stephen P. Norman (or to his replacement)
Secretary
American Express Company
200 Vesey Street, 50th Floor
New York, New York 10285

From:
Mr. Peter Lindner
1 Irving Place, Apt. G-23-C
New York, New York 10003

Date: December 29, 2009

This constitutes the proposal of shareholder Peter Lindner to be presented at the Annual Meeting of shareholders of American Express Company to be held on or about April 24, 2010.

Required Information pursuant to American Express Co. by-law 2.9:

**(i)     (a)  Brief description of business proposal.**

Amend Amex's Employee Code of Conduct ("Code") to include mandatory penalties for non-compliance, the precise scope of which shall be determined by a "Truth Commission" after an independent outside compliance review of the Code conducted by outside experts and representatives of Amex's board, management, employees and shareholders.

**(b)  Reasons for bringing such business to the annual meeting.**

Personal experience by Mr. Lindner of discrimination in violation of Title VII of the Civil Rights Act of 1964 and anecdotal evidence show that the Code is breached and not enforced. Rather, management regards the Code as nothing more than window-dressing for Sarbanes-Oxley compliance. This lack of adherence to basic principles of conduct erodes confidence in the Company, has affected or will affect the market price of the Company's shares, and warrants attention from the shareholders. In other words, this matter affects Shareholders as well as being socially significant, as is indicated in SEC Rule 14(a)(8) on Shareholder Proposals:

> "proposals relating to such matters but focusing on sufficiently significant social policy issues (e.g., significant discrimination matters) generally would not be considered to be excludable, because the proposals would transcend the day-to-day business matters and raise policy issues so significant that it would be appropriate for a shareholder vote."
> http://sec.gov/rules/final/34-40018.htm

**(ii) Name and address of shareholder bringing proposal:**

Mr. Peter Lindner
1 Irving Place, Apt. G-23-C
New York, New York 10003

4

**(iii) Number of shares of each class of stock beneficially owned by Peter Lindner:**

Common: about 900 shares in ISP and Retirement Plan.

**(iv) Material interest of Peter Lindner in the proposal.**

Mr. Lindner has no financial interest in the proposal. He has been wronged by Amex employees' breach of the Code and Amex's failure to enforce the Code against those employees.

**(v) Other information required to be disclosed in solicitations.**

Mr. Lindner is a plaintiff in an action against the Company arising out of the aforesaid breach.

Thursday, January 07, 2010 9:11:41 AM

Albert Breud, II, Esq.
356 Veterans Memorial Hwy, #8n
Commack, NY 11725
Home: (631) 543-3030
Fax: (631) 543-2888

Re: Amex Shareholder Proposal Communication to Court
and for Al to forward to Ms. J. Park, Esq.

Al:

As we discussed: please forward this to Ms. Jean Park, Esq., in the interim, until
The Court approves my communicating directly with Ms. Park, as per the enclosed letter
of January 6-7, 2010.

By: _____
Peter W. Lindner
Plaintiff, *Pro Se*
1 Irving Place, Apt. G-23-C
New York, New York 10003
Home/ Fax:   212-979-9647
Cell:              917-207-4962