UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

PETER W. LINDNER,                                        :          Civ. No. 06-3834 (JGKTHK)
                                                         :          Hon. John G. Koeltl
                              Plaintiff,                 :
                                                         :
-against-                                                :
                                                         :
AMERICAN EXPRESS CORPORATION and                         :
QING LIN,                                                :
                                                         :
                              Defendants.                :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X


# MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT


LEVINE & BLIT, PLLC
*Attorneys for Plaintiff*

Empire State Building
350 Fifth Avenue, 36th Floor
New York, New York 10118
Phone: (212)967-3000
Fax: (212)967-3010

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT...................................................... 1

FACTS................................................................................ 2

    A.    SUMMARY OF RELEVANT FACTS........................... 2

    B.    DISPUTE OF DEFENDANTS' ALLEGED FACTS.......... 3

ARGUMENT........................................................................ 7

    I.    THE DEFENDANTS' MOTION SHOULD BE DENIED.... 7

        A.    Standard of Review......................................... 7

        B.    A Reasonable Juror Could Conclude That Plaintiff has    8
            Established Breach of Contract

            1.    Defendants Breached a Contract Provision..... 8
                a.    Paragraph 12 Breach...................... 9
                b.    Paragraph 13 Breach...................... 10
                c.    Defendants' Unpersuasive Claims of .. 11
                     No Breach
            2.    Plaintiff Suffered Damages as Result of........ 12
                Defendants' Breach
            3.    Defendants Have No Basis to Claim That the .. 13
                Plaintiff Impliedly Waived and/or is Equitably
                Estopped From Asserting any Breach

        C.    A Reasonable Juror Could Conclude That Plaintiff has. 15
            Established Retaliation Under Title VII

            1.    *Prima Facie* Retaliation............................ 15
            2.    Plaintiff Engaged in a Protected Activity........ 15
            3.    Plaintiff Suffered Adverse Employment Action 17
            4.    A Causal Connection Existed ...................... 19

        D.    A Reasonable Juror Could Conclude That Plaintiff has. 21
            Established Tortious Interference

            1.    Defendants' Malice or Wrongful Means......... 22
            2.    Defendants Interference Cased injury............. 22

CONCLUSION...................................................................... 23

## PRELIMINARY STATEMENT

Plaintiff Peter W. Lindner ("Lindner") submits this memorandum of law in opposition to Defendants American Express Corporation's ("American Express") and Qing Lin's ("Lin") motion for summary judgment.

Lindner previously engaged in protected activities under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq. ("Title VII"), as a result of Defendant Lin's actions while Lin was Lindner's supervisor at American Express. Subsequently, Lindner and American Express entered into a Settlement Agreement and General Release ("Settlement Agreement") to settle complaints stemming from Lin's actions towards Lindner, among other things.

In 2005, American Express and Lin were in clear violation of the Settlement Agreement when Lin disclosed information about Lindner to a prospective employer of Lindner's. Such disclosure of information was admitted by the Defendants during discovery in the Deposition of Qing Lin ("Lin Deposition", Ex.C)[1], the Deposition of Jason Brown ("Brown Deposition", Ex.D)[2] and the investigation notes of Jason Brown ("Brown Notes", Ex. B).

Plaintiff's Amended Complaint states claims for breach of contract, retaliation under Title VII and tortious interference with business relations. Defendants' arguments in response to such claims are speculative and not based in the law. Therefore, a reasonable juror should find for the Plaintiff on all of his claims. Defendants' motion for summary judgment should be denied.

---

[1] For all references to Deposition of Qing Lin ("Lin Deposition"), please see Exhibit C.
[2] For all references to Deposition of Jason K. Brown ("Brown Deposition"), please see Exhibit D.

1

## FACTS

The relevant facts supporting Plaintiff's opposition are set forth in the Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment, the Amended Complaint, the Declaration of Peter W. Lindner ("Lindner Decl."), the Opposition Declaration of Peter W. Lindner ("Lindner Opposition Decl."), the Plaintiff's Rule 56.1 Statement ("Plaint. 56.1") and throughout this Memorandum. The Court is respectfully referred to these documents for a full recitation of the facts.

### A.    Summary of Relevant Facts

For the Court's convenience, an abbreviated statement of the factual background is reiterated here. Specific statements offered as facts by the Defendants are then disputed. Plaintiff Lindner had been employed by American Express from 1990 to about November, 1998. (Lindner Decl., ¶2) Qing Lin was Plaintiff's supervisor during a period of his employment at American Express. (*Id.*)

Lin's actions towards Lindner prompted Lindner to file an EEOC complaint against American Express in 1999, a complaint in which Lin was specifically discussed. (*Id.* at 3) Lindner sued American Express in late 1999 or 2000 for, among other things, sexual harassment by his supervisor Lin in violation of Title VII. (*Id.*) Pursuant to a Settlement Agreement, the parties settled their lawsuits in June, 2000. (*Id.* at 4)

Among other provisions, the Settlement Agreement placed restrictions on American Express and Lin in the following manner. First, the company agreed not to disclose any facts and circumstances leading up to Lindner's termination or the Settlement Agreement to anyone outside of the company. (Ex. A, ¶12) Second, the company agreed to only disclosed Lindner's dates of employment, positions held and

2

final salary in response to any inquiries for references. (Ex. A, ¶12)  Third, specific

employees, including Qing Lin, were restricted from disclosing any information to any

person outside of the company regarding Lindner, and were to direct all inquiries to

human resources. (Ex. A, ¶13)

   In 2005, Lindner sought full-time employment at Fischer Jordan, LLC ("Fischer

Jordan"). (Lindner Decl., ¶5)  Boaz Salik ("Salik"), a principle of Fischer Jordan,

inquired to Lin regarding Lindner. (*Id.*)  It was American Express' and Lin's duties under

the Settlement Agreement to ensure that Lin provide no information to Salik, and to

direct Salik to American Express human resources, which had the authority to disclose

only Lindner's dates of employment, positions held and final salary. (Ex. A, ¶12-13)

   American Express and Qing Lin disregarded and breached the Settlement

Agreement when Lin made comments regarding the Plaintiff to Salik. (Lindner Decl., ¶6)

Lin's comments were not limited to Lindner's dates of employment, positions held and

final salary (*Id.*), and Lin disregarded his duty under the Settlement Agreement to simply

refer Salik to human resources.  Material provisions of the Settlement Agreement were

violated by such acts.  Lin made these remarks in retaliation for Plaintiff's previously

filed EEOC complaint and lawsuit against American Express, in violation of Title VII.

   **B.**   **Dispute of Defendants' Alleged Facts**

   The above facts are not in dispute.  The Defendants, therefore, have no grounds

for summary judgment.  The Defendants, however, have misconstrued material facts in

the Statement of Facts included in their Memorandum of Law in Support of Defendants'

Motion for Summary Judgment ("Defendants' Memo")  The misconstrued facts follow.

3

First, in the Defendants' Memo, the Defendants state that Lindner's claims are based on his 'suspicions' about what Lin said to Salik. (Def. Memo, p.1)  This is quite a mischaracterization given that Lin has admitted, in sworn deposition testimony, to specifically providing information to Salik in violation of the Settlement Agreement.

Q       Did you disclose any information?

A       Yes.

Q       To whom did you disclose it?

A       Boaz Salik. Exhibit C, p.176:7-10.

Second, the Defendants, inexplicably, seek to place the blame for Lin's actions on Lindner.  In an attempt to contend that Lin was somehow forced to violate the Settlement Agreement, the Defendants stated, "It was none other than Lindner who placed Lin in the position of providing that reference by giving Fischer Jordan Lin's name as a reference." (Defendants' Memo, p.1)  This statement is ignorant of the facts, and disregards three important points.  First, Lindner honestly answered a question by Salik seeking names of those that Lindner worked for at American Express. (Lindner Decl., ¶5)  Second, Lindner provided an exhaustive list of names, not just Lin's in isolation. (Lindner Decl., ¶5).  Third, and most importantly, way back in 2000 the Settlement Agreement contemplated a situation where Lindner would provide Lin's name in such a context, and provided specific instructions to American Express and Lin as to what Lin should say. (Ex. A, ¶13)  In fact, ¶13 was included specifically *for* such a situation.  Such a situation should have been a surprise to no one, as American Express agreed to ¶13 of that Settlement Agreement, and Lin was instructed regarding it. (Def.56.1, ¶11)  Lin was not placed in a position not previously contemplated, and wasn't forced to disclose anything.

4

Third, the Defendants contend Lin believed that Lindner permitted him to provide information to Salik, because Lindner mentioned Lin to Salik. (Def. Memo, p.6)  Lin provided no basis for this belief.  As discussed above, the Settlement Agreement was previously contemplated. (Ex. A, ¶13)   And, it specifically restricted what Lin could disclose in such situations. (*Id.*)  This wholly contradicts any assertion that Lin had cause to believe that he had Lindner's permission to disclose information about Lindner.

Fourth, the Defendants contend that Lindner knew that Salik would contact Lin regarding a reference, and Lindner "did not tell Salik or  (Trever) Barran to refrain from making any pre-offer contact with Lin or any other Amex reference." (Def. Memo, p.5)  This suggestion masked as fact is wholly unreasonable.  Lindner had no such duty to portray himself negatively to a prospective employer.  Had Lindner prevented  Salik from speaking to a former employer, such an act could clearly be construed negatively by Salik.  This would be contrary to the purposes of specific provisions of the Settlement Agreement which clearly contemplated Lindner mentioning Lin's name to a prospective employer.  Lin violated the Settlement Agreement through no fault of Lindner's.

Fifth, the Defendants state that Lin had no knowledge that Lindner had engaged in protected activity. (Def. Memo, p.3)  For a defendants' motion for summary judgment, this is not an undisputed fact.  In fact, Lin had many opportunities to learn of Lindner's EEOC charge, lawsuits and settlement.  It was Lin's conduct towards Lindner that was the basis of Lindner's original EEOC charge. (Lindner Decl., ¶3)  Lin was specifically listed in the charge as the violator of Lindner's rights. (Lindner Decl., ¶3)  Likewise, Lin was aware of the Settlement Agreement which settled Lindner's EEOC charge and subsequent lawsuits.  American Express has admitted that in-house counsel instructed

5

and directed Lin regarding terms of the Settlement Agreement. (Def. 56.1, ¶11). Ash

Gupta, Lin's immediate supervisor, also discussed the settlement with Lindner. (*Id.* at

¶13) Gupta further told Lin of specific provisions of the Settlement Agreement. (*Id.*)

American Express was certainly aware of Lindner's protected activity and it is difficult to

imagine any possibility that Lin wasn't made aware.

Sixth, the Defendants mischaracterize the comments that Lin made to Salik.

Specifically, the Defendants state that, "Lin made no negative or disparaging remarks

about Lindner to Salik." (Def. Memo, p.6)  Besides being inaccurate, this statement

ignores the obvious and supports the Plaintiff's claims that Lin, who was to disclose *no*

information to Salik, violated the Settlement Agreement.

Still, Lin did make negative remarks to Salik regarding Lindner. Among other

things, Lin admitted telling Salik that Lindner could not work at American Express. (Ex.

D, p.216:18-20, Ex. B)  Such a statement could obviously be construed negatively or

disparagingly, certainly not be positively or, even, neutrally.  In general, an employee

who provided good service and was an asset to his firm would be welcome back under

appropriate circumstances.  The fact that an employee isn't allowed back to his former

firm strongly suggests a negative separation.  For the defense to contend that such a

statement could not constitute a negative reference is unreasonable.

In addition, besides those statements admitted by Lin, the Plaintiff contends that

Lin made other negative statements regarding his employment at American Express.

Even faint praise by a former employer could be construed negatively, which is the

specific reason that the Settlement Agreement restricted Lin from disclosing any

6

information.  From this information, the Court cannot conclude that Lin made no negative remarks for the purposes of Defendants' summary judgment motion.

Finally, seventh, the Defendants contend that Fischer Jordan did offer a full-time position to Lindner, albeit a short-term, full-time position. (Def. Memo, p.7)  Regardless of the hours per week, Lindner was never offered any long term prospects, or benefits, accorded to a tradition full-time job offer. (Lindner Decl., ¶5)  In fact, the position was severely limited in time, to only a few months. (*Id.* at 7, 10)  Fischer Jordan used the Plaintiff to fill a short-term need, but never considered him for a traditional full-time position because of the Defendants' actions.  This job offer does not support the Defendants contention that summary judgment should be granted in their favor.

As a whole, the alleged facts presented by the Defendants are not undisputed.  Therefore, those alleged facts should not support their motion for summary judgment.

**ARGUMENT**

I.    **DEFENDANTS' MOTION SHOULD BE DENIED**

   A.    **Standard of Review**

The Defendants' motion does not satisfy the standards for summary judgment under FRCP 56 (Rule 56, Fed.R.Civ.P.), and, therefore, should fail. Summary Judgment motions should be reviewed *de novo*, construing the evidence in the manner most favorable to the non-moving party. Holtz v. Rockefeller & Co., Inc., 258 F.3d 62 (2nd Cir. 2001), *See* Tenenbaum v. Williams, 193 F.3d 581, 593 (2d Cir.1999), *cert. denied*, 529 U.S. 1098, 120 S.Ct. 1832, 146 L.Ed.2d 776(2000). Summary Judgment should only be granted where the, "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law."

Fed.R.Civ.P.56(c); *see also* Celotex Corp. v. Catrett, 477 U.S. 317, 322, (1986). The

responsibility of the Court in assessing the merits of a summary judgment motion is thus

not to try issues of fact, but rather to "determine whether there are issues of fact to be

tried." Sutera v. Schering Corp., 73 F.3d 13, 16 (2d Cir. 1995) (*quoting* Katz v. Goodyear

Tire & Rubber Co., 737 F.2d 238 244 (2d Cir. 1984)).

### B.    A Reasonable Juror Could Conclude That the Plaintiff Has Established Breach of Contract

The Plaintiff's *prima facie* case of breach of contract has been established.

Therefore, Defendants' summary judgment motion should be denied. According to the

Defendants, to establish *prima facie* breach of contract under New York Law, the

Plaintiff must prove: (1) existence of a contract; 2) adequate performance of the contract

by the plaintiff; 3) breach of the contract provisions by the defendant, and 4) damages as

a result of the breach. Arnone v. Deutsche Bank, A.G., 2003 U.S. Dist. LEXIS 7941, at

*7 (S.D.N.Y., May 13, 2003); Tagare v. NYNEX Network Sys. Co., 921 F. Supp. 1146,

1149 (S.D.N.Y. 1996). (Def. Memo, p.10)  According to the Defendants, the Plaintiff is

only unable to satisfy elements three (3) and four (4). (Def. Memo, p.10)

### 1.    Defendants Breached a Contract Provision

The Defendants seek to convince the Court that Lindner's claims are based on

"bare assertion, speculation and surmise, unsupported by any concrete particulars." (Def.

Memo, p.12)  However, the evidence uncovered in the Lin Deposition (Ex.C), Brown

Deposition (Ex.D), and Brown Notes (Ex.B) discussed below, are not bare assertion,

speculation and surmise, and directly prove breach of the Settlement Agreement.

Likewise, additional statements at least raise questions to be decided by the triers of fact.

### a.  Paragraph Twelve (12) Breach

Paragraph twelve (12) of the Settlement Agreement states, in plain language, that:

> The Company, Ash Gupta and Richard Tambor represent and agree not to disclose to any party outside of the Company any of the facts and circumstances leading up to Mr. Lindner's termination; or leading up to this Agreement, except on a need to know basis for legitimate business purposes...The Company further agrees that it will disclose only Mr. Lindner's dates of employment, positions held and final salary in response to any inquiries or requests for references regarding Mr. Lindner. (Ex. A, §12)

The language of Paragraph twelve (12) is unambiguous.  The information that the

company may disclose 'in response to inquiries or requests for references regarding Mr.

Lindner,' is precisely limited to dates of employment, positions held and final salary.

| Q | Did you disclose any information? |
|---|---|
| A | Yes. |
| Q | To whom did you disclose it? |
| A | Boaz Salik. Exhibit C, p.176:7-10. |

Lin told Salik that Lin is not sure if Lindner can work at American Express (Ex. B),

A       "I'm not sure whether he can be used on an AXP." (Ex. D, p.216:18-20)

and that Lindner, "did not have the right [work] ethic to work at Amex," and "did not fit

into the culture at Amex." (Lindner Decl., ¶6)  Lin also told Salik that,

A       "Peter is technical guy." (Ex. D, p.216:17, Ex. B)

The information given to Salik was not limited to Lindner's dates of employment,

positions held and final salary, as required by the Settlement Agreement, Paragraph

Twelve (12). (Ex. A, ¶12)  Lin's disclosures, therefore, constitute breach.

9

### b.    Paragraph Thirteen (13) Breach

Paragraph Thirteen (13), read in conjunction with Paragraph twelve (12), places

two more stringent duties on Lin and other specific personnel of Defendant American

Express.  The first is a duty imposed upon named individuals to not disclose *any*

information regarding Lindner to anyone outside of American Express.  The second is a

duty to direct all inquiries regarding Lindner to human resources.

Paragraph Thirteen (13) of the Settlement Agreement states, in plain language:

> The Company agrees to instruct and direct the following Company employees not
> to disclose any information regarding Mr. Lindner's employment or termination
> of employment from the Company to any person outside of the Company and to
> direct all requests for references or inquiries received by such employees
> regarding Mr. Lindner to the appropriate human resources individual(s): …Qing
> Lin… (Ex. A, §13)

Lin's statements to Salik, reiterated above, are clear and undisputable violations

of the Paragraph Thirteen (13) provision, 'not to disclose any information' regarding

Lindner, read in conjunction with paragraph twelve's (12's) directives.  Likewise, Lin

also failed to satisfy the second provision of Paragraph Thirteen (13).  In response to

Salik's inquiries regarding Lindner, Lin did not direct Salik to appropriate human

resources individual(s), as required by Paragraph Thirteen (13) of the Settlement

Agreement, read in conjunction with Paragraph Twelve (12).

Q    …Did you direct Mr. Boaz to the appropriate HR…?

A    No.  (Ex. C, p.177:21-23).

Lin and American Express, by and through Lin, clearly breached provisions of the

Settlement Agreement, thus satisfying element three (3) of the Arnone test for breach.

### c.   Defendants' Unpersuasive Claims of No Breach

The Defendants seek to ignore the above-referenced disclosures by Lin, and argue

that no breach occurred.  The Defendants' first argument to support such an assertion is

that Lin's statements constituted positive or neutral employment references. (Def. Memo,

p.12)  This contention is disingenuous and without foundation.  For example, the

statement in which Lin told Salik that Lin doesn't know if Lindner can work at American

Express, a prospective employer could reasonably view such a statement as negative.   In

fact, the logical assumption of such a statement is that the former employer was not

pleased with some aspect of the employment relationship, if they are willing to go as far

as barring the individual from any future employment.  This logical conclusion is,

certainly, negative.  Thus, Lin's statements were not solely positive or neutral.

Second, the Defendants claim that they had a "legitimate business purpose" in

informing Salik that Lindner cannot work at American Express. (Def. Memo, p.13)  This

argument does not stick, neither, as the 'legitimate' purpose lacks all legitimacy.  The

Settlement Agreement prevented Lindner from working as an employee for American

Express, or any company in which American Express held a fifty-one (51) percent

ownership interest. (Ex. A, ¶7)  The Settlement Agreement placed no restriction on

Lindner from working for an independent company doing consulting work for American

Express.  As Lindner wasn't applying for a job at American Express, no 'legitimate'

purpose existed for informing Salik that Lindner could not work at American Express.

Finally, the Defendants make one final attempt to show that the no liability for

breach should flow to American Express. However, this attempt falls short of the law,

just as the others.  The Defendants state that the term 'Company' in paragraph twelve

11

(12) of the Settlement Agreement excludes Lin and the other individuals listed in paragraph thirteen (13) of the Settlement Agreement and that paragraph thirteen (13) 'carves out' and removes any liability for breach with regard to employment references from American Express. (Def. Memo, pp. 11-12)  Such a contention ignores the obvious facts.  First, Lin was employed by American Express as a high-level manager at the time he made disclosures to Salik.  American Express, therefore, was vicariously liable for Lin's acts.  Second, paragraph twelve (12), read as a stand-alone provision, was enough to impute liability for Lin's actions on to American Express.  And, third, paragraph twelve (12), even when read in conjunction with paragraph thirteen (13), does not remove liability from the Company in any way but, instead, acknowledges that some American Express employees harbor more hostility towards Lindner, and that Lindner desired added protection from such employees.

Despite several attempts, none of Defendants' arguments support their motion for summary judgment .  Defendants' provide scant case law to support their assertions, and their contentions reveal a disregard of the facts of the case, the law and the Settlement Agreement.  Summary Judgment for the Defendants, therefore, should not be granted.

### 2.    Plaintiff Suffered Damages as a Result of Defendants' Breach

To support their motion for summary judgment, Defendants contend that, as an undisputed fact, the Plaintiff suffered no damages as a result of their breach.  Plaintiff, in fact, suffered damages as a result of the Defendants' actions.  Lindner was hired by Fischer Jordan for part-time, contract work, despite the facts that he applied for a full-time position, and endured a probation period seemingly reserved for potential full-time hires. (Lindner Decl., ¶7, 8)  But, such work was only temporary. (Lindner Decl., ¶10)

12

Lindner suffered damages as a result of his failure to achieve full-time employment at Fischer Jordan.  Particularly, Lindner lost out on the full-time position in which he applied for, with a salary of $85,000 per annum, plus bonus. (Linder Opp. Decl., ¶3).

The Defendants claim to have irrefutable evidence, produced by Fischer Jordan, regarding Lindner's employment. (Def. Memo, p.13)  However, such evidence, including statements by Salik and Barran, were not subject to cross-examination and further exploration of the ties between American Express and Fischer Jordan.  At the least, there exists a question of fact regarding this evidence.

The Defendants also claim that Lindner was hired by Fischer Jordan only for a specific project, and when the project ended, so too did Lindner's employment. (*Id.*)  However, the fact is that Lindner was terminated not when a project ended, but when his temporary contract expired, (Lindner Decl., ¶10) and he suffered damages as a result.

### 3.    Defendants Have No Basis to Claim that Plaintiff Impliedly Waived and/or is Equitable Estopped From Asserting any Breach of Contract Claim

In a final effort to avoid liability for breaching the Settlement Agreement, the Defendants proffer that Lindner has implicitly waived and/or is equitably estopped from enforcing the applicable terms of the Settlement Agreement because he gave Lin's name as a potential reference to Fischer Jordan. (Def. Memo, pp.13-14)  Such a contention is not based in the law.  To support their contention that Lindner implicitly waived provisions, the Defendants rely on the case Fundamental Portfolio Advisors v. Tocqueville Asset Mgmnt . *LLP, 22* A.D.2d 244, 209-10, 802 N.Y.S.2d 17, 21-22 (1st Dep't 2005) (*Citation Incorrect).*  The Defendants contend that this case supports their

13

claim that behavior such as Lindner's, "comprise an implied waiver of the employment

reference provisions of the settlement agreement." (Def. Memo, p.14)

 However, in a review of that lower court case, the Court of Appeals stated that,

> …waiver should not be lightly presumed and must be based on clear
> manifestation of intent to relinquish a contractual protection. Generally, the
> existence to forego such a right is a question of fact. <u>Fundamental Portfolio
> Advisors v. Tocqueville Asset Mgmnt . LLP</u> <u>7 N.Y.3d 96, 104</u> (2006)

Waiver should not be lightly presumed in a case such as this.  Under this standard

articulated by the Court of Appeals, it is highly unlikely that Lindner's actions, with

regard to his inclusion of Lin among a list of people that he worked for, would be found

to have waived Lindner's contractual rights.  Such actions are not a clear manifestation of

intent to relinquish a contractual protection.  At the worst, the alleged implied waiver

would be a question of fact not supporting the Defendants summary judgment motion.

 The Defendants equitable estoppel claim suffers the same fate.  Based on the case

<u>Baron v. Lombard</u>, <u>419 N.Y.S.2d 388, 389</u> (4th Dep't 1979), Defendants claim that

Lindner's actions induced a belief by Lin that Lindner waived the Settlement Agreement

provisions related to disclosures.  This is a wholly unreasonable contention.  First, the

Defendants did not support their claim with any evidence.  Second, the Defendants failed

to consider that the Settlement Agreement contemplated that Lindner would have to name

Lin as a reference from time to time, and instructed Lin as to exactly what to say in such

circumstances.  Lindner's actions induced no such belief of waiver.  Lindner's actions

were wholly consistent with the Settlement Agreement.

14

For the above stated reasons, a reasonable juror could conclude that the

Defendants breached the Settlement Agreement.   Summary Judgment in favor of the

Defendants with regard to this claim is, therefore, inappropriate.

### C.    A Reasonable Juror Could Conclude That Plaintiff has Established Retaliation Under Title VII

#### 1.    *Prima Facie* Retaliation

The Plaintiff's *prima facie* case of retaliation under Title VII has been established.

Therefore, Defendants' summary judgment motion should be denied.

Section 704(a) of Title VII provides, in relevant part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment…because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter. Sumner v U.S. Postal Serv., 899 F.2d 203, 208 (2d Cir. 1990), citing Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e-3(a)

To establish a *prima facie* claim of retaliation under Title VII, the Plaintiff must

show that: (1) he had engaged in a protected activity of which the Defendants were

aware; (2) he was subject to an adverse employment action; and, (3) there was a causal

nexus between the protected activity and the adverse action taken. Jute v. Hamilton

Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005).

#### 2.    Plaintiff Has Shown That He Was Engaged in a Protected Activity of Which the Defendants Were Aware

In the present case, the Plaintiff participated in a course of protected activity

known to the Defendants.   The course of activity became known to the Defendants in the

following manner: (1) Plaintiff filed an EEOC charge for alleged violations of his rights

by Lin and American Express; (2) on or about 1999 or 2000, Plaintiff sued American

Express for same violations; and (3) Plaintiff and American Express entered into Settlement Agreement, in which Lin was named, to settle lawsuits. (Lindner Decl., ¶3, 4.)

American Express was clearly aware of Plaintiff's engagement in protected activity, based on the American Express' participation in the above-listed activities. Likewise, it is almost impossible to fathom that Defendant Lin was not aware, as well.

Lin, for one, was the individual who targeted Lindner initially, and was the focus of Lindner's initial EEOC charge. (Lindner Decl., ¶3)  Lin's name was specifically stated in the EEOC charge, and it is highly likely that both the EEOC and IBM investigated Lin based on the charge.  Second, Lin was specifically listed in paragraph thirteen (13) of the Settlement Agreement. (Ex. A)  The Settlement Agreement specifically arose out of Lindner's initial protected activity and, thus, is included among Lindner's protected activity.  Third, American Express specifically admitted to verbally informing Lin of the Settlement Agreement (Def. Memo, p.4), and instructing and directing Lin of the provisions of the Settlement Agreement. (*Id.* at 4)  While Lin denied knowledge of lawsuits between Lindner and American Express (Def. 56.1, ¶14,15), Lin did not deny knowledge of the EEOC charge or the purpose of the Settlement Agreement.  As the main focal point of all of Lindner's complaints since 1999, it is wholly incredible to believe that Lin had no idea of Lindner's protected activity.  Both American Express and Lin knew that Lindner engaged in protected activity under Title VII.

Any other interpretation of the facts is unfair. The Defendants seek to proffer this assertion that no liability for retaliation is incurred because Lin never became aware of Lindner's protected activity, despite substantial evidence to the contrary. Such an argument by the Defendants should be treated with extreme caution.

16

If the Defendants' argument is allowed, the law protecting employees from retaliation would be crippled. Given that Lin was both an employee of American Express and the individual responsible for the violations against Lindner, if the Defendants' argument succeeds, all companies would have to do to shield themselves from liability for retaliation is to not inform the violator employee of the plainitff's protected activities. Such planned ignorance would allow every defense to succeed with regard to the first element of the retaliation claim, to the detriment of every victim of retaliation. Where an employee, such as Lin, was so intertwined in the facts of a case and knew or was highly likely to have known of the Plaintiff's protected activity, the retaliation claim should succeed, lest justice will never be served.

### 3.   Plaintiff Has Shown That He Was Subject to an Adverse Employment Action

In the present case, the Plaintiff was subject to an adverse employment action under the law. "The scope of the anti-retaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm." Washington v. Bell South Telecomms., Inc., 285 Fed. Appx. 597 (11th Cir. 2008), quoting Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. at 67.

Adverse employment actions need only be harmful to the point that they may dissuade a reasonable employee from making or supporting a charge of discrimination, Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. at 68. "We have no doubt that the prospect of a negative employment reference, which has the obvious potential to impede the search for a new job, would deter a person of ordinary firmness

from exercising his constitutional rights." <u>Brescia v. Sia, 2008 BL 91797, at 8</u>, quoting

<u>Zelnick v. Fashion Inst. Of Tech., 464 F.3d at 225</u>.

Anti-retaliation provisions are strictly construed against the former employer.

Even when a prospective employer does not base its hiring decision on the negative

reference from a former employer, courts have recognized that the prospective

employer's non-reliance on the reference does not preclude a claim for retaliation.

<u>Hashimoto v. Dalton, 118 F.3d 671, 676</u> (9th Cir. 1997).    Such an unlawful personnel

decision, "even if it turns out to be inconsequential, goes to the issue of damages, not

liability." <u>Hashimoto v. Dalton, 118 F.3d at 676</u>, s*ee, e.g.*, <u>Smith v. Secretary of Navy,</u>

<u>659 F.2d. 1113, 1120</u> (D.C. Cir. 1981).

The Plaintiff inserted key provisions into the Settlement Agreement to protect his

future employability, considering that any future disclosures by American Express could

be construed negatively given the conditions in which he separated from the company.

(Lindner Decl., ¶4)  As discussed above, the Defendant Lin specifically violated the

Settlement Agreement by disclosing information about Lindner to Salik.

Q      I'm asking did you give any information to Boaz, please?

MS PARK:    About you?

MR. LINDNER:      Yes.

A.      The answer is, yes. (Ex. C, p:331:6-10, s*ee* Ex. C, at 176:7-10)

Lin also violated the Settlement Agreement by failing to direct Salik to human resources.

(Ex. C, 177:21-23, Lindner Decl., ¶6)  Finally, Lin violated the Settlement Agreement by

telling Salik that Lindner cannot work at American Express (Ex. D, Ex. B, Lindner Decl.,

¶6), a statement that likely would be construed negatively by a prospective employer.

18

While these facts clearly establish adverse employment actions under the law, the Defendants fail to grasp the concept.  This is likely because the Defendants misconstrue the case law.  For example, the Defendants rely solely on the case <u>Syzmanski v. County of Cook</u>, a 7th Circuit case, to support their contention that no adverse employment action occurred. <u>468 F.3d 1027</u> (7th Cir. 2006)  <u>Syzmanski</u>, however, is distinguishable. <u>Syzmanski</u> involves no settlement agreement between the former employer and employee.  The settlement agreement is the key.  Its presence indicates that a former employee gave up rights that could have been secured through the courts and EEOC complaint process for the added protections of the agreement.  The employer's violation of the settlement agreement, alone, is enough to constitute an adverse employment action, when the settlement agreement arose out of protected activity.  That, in conjunction with the fact that Lin's statements to Salik could be construed as a negative employment reference, illustrate that the Plaintiff suffered adverse employment actions.

### 4.   A Causal Connection Exists Between the Protected Activity and the Adverse Employment Action

In the present case, a causal connection exists between the protected activity and the adverse employment action, despite Defendants' contention. (Def. Memo, p.16)  The Defendants' contention stems from a misunderstanding of the law.

According to the Eleventh Circuit, at the *prima facie* stage of the retaliation case, "[t]he causal link element is construed broadly so that a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." <u>Pennington v. City of Huntsville</u>, <u>261 F.3d 1262,1266</u> (11th Cir.2001), citing <u>Olmsted v. Taco Bell Corp.</u>, <u>141 F.3d 1457, 1460</u> (11th Cir.1998) (quoting <u>E.E.O.C. v.</u>

Reichhold Chem., Inc., 988 F.2d 1564, 1571-72 (11th Cir.1993)) "Title VII is violated if a retaliatory motive played a part in the adverse employment actions even if it was not the sole cause." Sumner v. United States Postal Serv., 899 F.2d at 209, quoting Davis v. State University of New York, 802 F.2d 638, 642 (2d Cir. 1986).

Lin was the person accused of the prior conduct which led to the Plaintiff's original protected activity. (Lindner Decl., ¶3)  This suggests animus by Lin directed towards the Plaintiff.  Likewise, Lin was the individual who specifically violated provisions of the Settlement Agreement by disclosing information. (Lindner Decl., ¶6)  In other words, Lin is personally involved in all aspects of the Plaintiff's Title VII allegations.  This personal involvement directly connects the protected activity to the adverse action, and suggests retaliatory animus on the part of Lin.  Therefore, a causal nexus exists between the protected activity and the adverse employment action.

The Defendants attempt to base their claim that no causal nexus exists in the present case on the decisions Sarno v. Douglas Eliman-Gibbons  Ives, Inc., 183 F.3d 155, (2d Cir. 1999) and Bailey v. USX Corp., 850 F.2d 1506, 1508 (11th Cir. 1988).  However, both cases are distinguishable from the present case.  Both cases simply involve protected activity on the part of the Plaintiff, and violation of the Plaintiff's rights while the protected activity was pending.  Neither Sarno nor Bailey involve settlement agreements which arose out of protected activity.  Recall, Lindner surrendered the right to go forward with his claims for the rights and benefits accorded by a Settlement Agreement which arose out of protected activity.  Such a fact scenario is quite different than those of  Sarno and Bailey.  Where a Title VII settlement agreement exists, a material violation of the

agreement, in itself, may constitute an adverse employment action, where a reasonable employee of ordinary firmness would be deterred from exercising his rights.

Likewise, the Defendants misconstrue the law with regard to the causal nexus element of retaliation. Confusingly, the Defendants claim that no causal nexus exists because Lindner allegedly cannot establish a connection between the adverse employment action and damages. Specifically, the Defendants state that, "Lindner is foreclosed from a causal connection between Lin's statements and Fischer Jordan's alleged failure to hire Plaintiff as a full-time SAS programmer." (Def. Memo, p.16) Clearly, this is a complete misread of the law as, stated above, the causal connection with regard to Title VII retaliation must exist between the protected activity and the adverse employment action, not the adverse employment action and damages sustained. Jute v. Hamilton Sundstrand Corp., 420 F.3d at 173.

The Defendants failed to support their claim for summary judgment with regard to Title VII retaliation. The Plaintiff, on the other hand, has proved a *prima facie* case of retaliation under Title VII. The Defendants' summary judgment motion should, therefore, be denied.

**D.    A Reasonable Juror Could Conclude That Plaintiff has Established Tortious Interference With Business Relations**

Defendants' motion for summary judgment with regard to Plaintiff's tortious interference claim should be denied. The third and fourth elements of the tortious interference claim which, according to the Defendants, are in dispute, are: (3) defendants acted either solely out of malice or used wrongful means; and (4) defendants'

21

interference caused injury to the business relationship. <u>Advanced Global v. Sirius</u>, 836

<u>N.Y.S.2d 807, 809-10</u> (N.Y.Sup.Ct. 2007)

### 1.   Defendants Acted Out of Malice or Used Wrongful Means

The Defendants acted with malice with regard to their interference in the

relationship between Lindner and Fischer Jordan.  The Defendants rely on <u>Miller v. Mt.</u>

<u>Sinai Med. Ctr.</u> to support their proposition that no malice or wrongful means were

present. <u>288 A.D.2d 72</u> (1st Dept. 2001), (Def. Memo, p.17)  However, <u>Miller</u> is

distinguishable from the present case.  <u>Miller</u> involved no settlement agreement and,

subsequent, breach of contract.  The Plaintiff, here, contends that the breach of the

Settlement Agreement constitutes 'wrongful means' under the third element of the test

for tortious interference.

Likewise, questions of fact remain as to whether Lin acted with malice.  First, it

can be concluded that Lin acted with malice because Lin did not want Lindner working

for Fischer Jordan at American Express.  Second, though Defendants allege that no

projects between American Express and Fischer Jordan were cancelled, such allegations

are not conclusive without further examination of relevant witnesses and documents. As

questions of fact exist, Defendants' motion for summary judgment cannot succeed.

### 2.   The Defendants' Interference Caused Injury to the Relationship

The Defendants rested their claim that no causal link existed between Lin's

remarks and any alleged injury solely on the alleged fact that Fischer Jordan had no full-

time SAS Programmer positions available in 2005. (Def. Memo, p.18)  This argument in

support of summary judgment, however, is weak and built on assumptions.  Most

importantly, the Defendants assume that the only position Lindner was capable of filling

was that of SAS Programmer, despite his qualifications which include an M.B.A in Finance from M.I.T. (Lindner Opp. Decl., ¶2)  Lindner was eminently qualified to perform many functions at Fischer Jordan.  The fact is that Lindner applied for a full-time position at Fischer Jordan, a position with a salary of $85,000 per annum, with bonus. (Lindner Opp. Decl., ¶3)  As Fischer Jordan inquired to Lin about Lindner, the position evaporated.  The Defendants have not established that no facts are in dispute regarding this claim.  Summary judgment in favor of the Plaintiff, therefore, is not warranted.

## CONCLUSION

The Defendants have failed to show that there are no genuine issues as to any material facts, and that they are entitled to a judgment as a matter of law. At the least, numerous genuine issues of facts exist, all of which reasonable jurors could conclude in the favor of the Plaintiff.  At the most, the Plaintiff has proved his *prima facie* case with regard to his breach of contract claim, his Title VII Retaliation claim and his tortious interference claim.  Summary judgment in favor of the Defendants on neither of the three causes of action is, therefore, warranted.


Dated: June 9, 2010
     New York, New York

                              LEVINE & BLIT, PLLC


                              MATTHEW J. BLIT (MJB 4145)

                              *Attorneys for Plaintiff*
                              Empire State Building
                              350 Fifth Avenue, 36th Floor
                              New York, NY 10118
                              Phone: (212)967-3000