USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED: 12/6/10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE HONORABLE USDJ GRIESA

------------------------------------X

PETER W. LINDNER,

06 Civ. 3834 (TPG)

Plaintiff,

-against-

MOTION TO ALTER OR AMEND A
JUDGMENT

AMERICAN EXPRESS CORPORATION and
QING LIN

Defendants.

------------------------------------X

Sunday, December 05, 2010 4:38pm

## Contents

PETER LINDNER, being duly sworn, says: .................................................................... 3
3.  I ask for a re-hearing of Your Honor's Judgment of November 18, 2010, and also .............. 3
4.  I have tried in vain to get Matt to see the realities of the situation that I have medical reasons for why the alleged oral agreement of Thursday, November 4th, 2010 should be set aside, even saying we can have a teleconference with my psychiatrist, but Matt had first accepted, and then rejected that offer. .................................................................................................................... 5
    "Rule 59. New Trial; Altering or Amending a Judgment ........................................... 6
10.  I also did not know what the tax consequences  (after-tax amount) of my deal, which is a normal precaution in any business deal, and I have an MBA and I would have tried to get my CPA to evaluate what this deal would net me after taxes ........................................................... 7
14.  Both Russell Moriarity and Matt Blit were instructed both in writing and in verbally on the day of the mediation and in the car riding over to the Court that the mediation should be stopped after 1-2 hours.  Neither objected nor qualified their agreement to that, and I did not have my cell phone to remind me to stop the mediation nor to take the spare Ritalin I carry with me.  Essentially, my safeguards were removed, and that includes my cell phone alarm, my lawyers who were ostensibly looking out for my best interests, but instead were focused on making a quick buck (or $100,000) regardless of my wishes to go to trial if the deal did not meet over $350,000 after taxes ........................................................................................................... 7
17.  I was told by the Confidential Informant that Matt had asked him whether he could influence me to take the deal.  I am not sure if both of them or just one of them said I could not leave, but had to make a counter-offer.  This is another example of where I was not thinking clearly due to the Ritalin wearing off. ........................................................................................ 8
20.  I instructed my lawyers to hand Your Honor two documents, which they debated in the Court Room 26B, prior to entering Your Honor's chambers, and they said that ethics would commit them to give the two documents of my psychiatrist's assessment of 2 pages and my 3 page summary of the case.  Matt Blit turned over neither, and I was only able to turn over the psychiatrist's assessment.  This is a violation of due process ........................................................ 9

1

21.     The person (whose name I have redacted) at the hearing is a Confidential Informant for the Government's Law Enforcement Officers.  He witnessed, the glance between Ms. Park and Mr. Blit, and saw Mr. Blit laugh out loud at me (in my face, so to speak) while I spoke to Your Honor.  When I entered that comment into the record, Mr. Blit whom Your Honor had sworn to tell the truth, then said that he coughed and did not laugh.  Thus, Mr. Blit both committed perjury, had "intent to deceive" the Court (a criminal misdemeanor in NY State and in SDNY under Local Rule 1.5) and also Contempt of Court.  NY Judiciary §487 on "intent to deceive" the Court occurs whether or not the lawyer is successful in their "intent to deceive" the Court – in this case Matt was successful. *Amalfitano v. Rosenberg* July  14 2009 06-2364-cv, US Second Circuit Court of Appeals [Walker, Calabresi, and Sack, Circuit Judges] – See excerpt in

Attachment 1.................................................................................................................... 10

d.    I also cite that the agreement was oral and not binding, since I did not get a copy, even though the full text was available to Amex and Jean Park, but not to Matt Blit or to me.   Under the PRECEDENT of USDJ Koeltl in this very case 06cv3834 *Lindner v Amex & Qing Lin*, an oral agreement is not binding unless it meets 4 conditions, including partial fulfillment, and also

that such terms are not usually done in writing. ........................................................ 11

iii.     I did find a copy of 2 drafts of Matt's "Retainer Agreement" and have attached an

enlarged photo of them in Attachment 3................................................................... 12

23.     Thus, I have my own observation under oath, and that of a Confidential Informant confirming it under sworn affidavit while Matt denied it, and we have not heard from Ms. Park whether she did exchange glances with Matt and then heard Matt laugh, in contradiction to what Matt then proclaimed.  Mr. Krinsky and Ms. Park are both Officers of the Court, and should be compelled to give their account, and perhaps should have volunteered on the spot to have alerted Your Honor to the truth of my statement and the falsity of Matt's, especially after the

Confidential Informant made his account known................................................................ 13

25.     Given that situation, I ask that Ms. Park and Mr. Krinsky should give a full accounting of what happened, and that should they not tell the whole truth and nothing but the truth, they should be liable under the laws for perjury, among other such laws.  Additionally, Matt's partner Leslie Levine should be compelled to give his account, or be allowed to plead the 5th Amendment.  I remind Your Honor that it was Mr. Blit who insisted on swearing me in, at which point I asked that the other lawyers be sworn in, over Mr. Blit's objection that lawyers are presumed to tell the truth.  I think we found the reason why Mr. Blit's objection was not valid. 14

Attachment A:  Amalfitano v. Rosenberg July  14 2009 062364pv3 .......................................... 15
Attachment B:  Redacted sworn testimony of witness and Government CI (Confidential Informant) corroborating perjury of Matt Blit, Esq. (after Mr. Blit was sworn in)..................... 17
Attachment 3:  Evolution of Retainer Agreement to remove the value of a case from "Withdrawal by the Firm … for good cause."......................................................................... 21

ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE HONORABLE USDJ GRIESA

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

PETER W. LINDNER,

                Plaintiff,

06 Civ. 3834 (TPG)

MOTION TO ALTER OR AMEND A
JUDGMENT

      -against-

AMERICAN EXPRESS CORPORATION and
QING LIN

              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X
Sunday, December 05, 2010 10:52 AM

STATE OF NEW YORK    )
                     :     SS.:
COUNTY OF NEW YORK  )

      PETER LINDNER, being duly sworn, says:

To the Honorable Judge Griesa,

1.  I am the Plaintiff pro se in this action.  *I hereby request oral argument* (PWL)

2.  I make this affidavit on personal knowledge, and to the best of my knowledge as my main PC is broken with many of the files.

3.  I ask for a re-hearing of Your Honor's Judgment of November 18, 2010, and also

    a.  for my case to be certified for appeal,

    b.  for my continuing and be certified for In Forma Pauperis, and

    c.  that Your Honor decide

        i.  whether Matt Blit, Esq. did have "intent to deceive" the Court on November 18, 2010 by saying he "coughed" when I accused him of laughing, and also

        ii.  whether Matt Blit, Esq. did commit perjury by so saying instead of acknowledging his laugh while under oath, and

1

     iii.  that the sworn affidavit and tape recording of XXXX [name redacted for confidentiality, since he/she is a paid government Confidential Informant] be accepted into evidence of such perjury by Mr. Blit.  This is "Attachment B." (see below for details on it being signed and notarized under oath before an impartial person)

d.  that Matt Blit be sanctioned for not giving both of the documents which his ethics lawyer Pery Krinsky instructed Matt to give Your Honor before the 10:30 am November 18, 2010 session

e.  that Your Honor empathize and recognize that I did not have full control of my mental faculties during the 6 hour long session without food/water/medicine.

f.  That the opposition had **no experts** to counter-argue that I was in unimpaired control of my mental faculties, whilst I had a certified psychiatrist[1] who noted and treated me with Ritalin and was fully familiar with my dosage level.

     i.  Moreover, Matt Blit and others had a financial motive to disregard my condition and thus not impartial witnesses, let alone competent medical authorities on such matters of Ritalin effects on thinking

     ii.  Ms. Park did not directly observe me, and she also was neither impartial nor a medical expert

     iii.  Magistrate Judge Katz is also not a medical expert, and he was not there from (as Your Honor indicated from Your Honor's testimony in the November 18, 2010 hearing that he was absent from 6:30 pm to 8pm), during when the agreement was being processed.

         1.  Thus, MJ Katz could not observe my thinking or actions at all during the critical negotiations of the last 90 (or so) minutes, which by the way would be markedly different from the first 90 minutes when I had taken my Ritalin ("medication") about an hour earlier

         2.  And in 1.5 hours, given that the agreement was already fully written by Ms. Park on computer media, the time is not explained by any other activity except by "negotiating" with me in an impaired mental state.

     iv.  The law states that given qualified experts – even though not present at the incident—their knowledge can and must be accepted over non-qualified

---

[1] "Establishing a foundation in court means allowing the expert witness on the stand to detail his or her credentials, reputation, and background. ... Medical experts are paid for their time on the witness stand however. Payment comes from the side that calls them to the stand. ... Medical experts qualified for witness is an all encompassing term."

http://www.articlesbase.com/law-articles/the-medical-expert-witness-role-in-legal-cases-1576003.html

non-medical lawyers who were "influenced by considerations of personal advantage"[2] (this is the opposite of neutral, disinterested parties).

g. That my videotapes and audiotapes made by Chait Video during the discovery phase and which I paid for in full be released to me, without restriction, instead of being held by the Court, since it is not the Court's property and that they are not and never were property of the Court.

h. Given that I am a pro se litigant, all restrictions and court ORDERs on my communications to Amex and to their lawyers should be reviewed with the goal of or removing all such restrictions.

4. I have tried in vain to get Matt to see the realities of the situation that I have medical reasons for why the alleged oral agreement of Thursday, November 4th, 2010 should be set aside, even saying we can have a teleconference with my psychiatrist, but Matt had first accepted, and then rejected that offer.

a. This implies that Matt Blit did not want the truth or even to know about the truth, but would rather oppose me in Court than find out what the expert said based upon the Expert's years of experience in general, and in my medical history in particular.

b. American Express had the right to obtain expert medical testimony, but did not do so. Thus Amex forfeited their right to object to the Expert's testimony, which they received in advance from my lawyer.

    i. I have no first hand knowledge if Mr. Blit did communicate that document from Dr. Newmark to Ms. Park, Esq.

    ii. If Mr. Blit did not do that by physically or electronically sending that information, then Mr. Blit was instrumental in hiding a salient condition that would have affected my agreement.

    iii. If Mr. Blit did not even tell Ms. Park about the evidence, then Mr. Blit would be concealing such evidence for personal and corporate benefit to himself, and to the firm Levine & Blit, which includes Leslie Levine, and his attorney Pery Krinsky (who was retained as an "ethics" counselor for this matter – and witnessed me giving both documents of Dr. Newmark and of my statement to Your Honor – more below).

---

[2] Quote taken as the opposite of disinterested.
http://www.google.com/search?q=disinterested&hl=en&sourceid=gd&rlz=1D1GGLD_enUS398US398

5. I have been in this position before, and I see it as greed by the lawyer for an immediate "sure thing" of money rather than a chance of losing and getting nothing with a trial, even if there is a big payout with the chance of winning at trials.

6. I have collected these documents as best I could, and had them bound, so that I can refute any allegations by my attorney that my I am making a false claim of being tired and unable to focus due to my ADHD (Attention Deficit Hyperactivity Disorder) for which I have been taking medication for over two years, under the supervision of Dr. Newmark, whose statement I have enclosed in the attachments.

7. I hereby make this motion under FRCP 59(e) to alter or amend Your Honor's Judgment:

   ## "*Rule 59.* New Trial; Altering or Amending a Judgment

   ### [...]

   ### (e) Motion to Alter or Amend a Judgment.

   A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."

   http://www.law.cornell.edu/rules/frcp/Rule59.htm

8. I note that Your Honor is age 81 ~~and~~ *as best I know (Dw)* ought to have some empathy for me at age 61, in that we both have difficulty in keeping in the best of minds for extended periods of time. Moreover, unlike Your Honor, I also have a medical condition known as ADHD (Attention Deficit Hyperactivity Disorder) which requires me to use medicine (Ritalin) to stay alert.

9. Specifically, Your Honor asked Mr. Blit, but not me, if I gave any indication that I was unsure. I would have answered that I asked my friend Bob Ellenport, Esq. over the phone whether I'd be happy with the decision a year from now. That indicated I could not make the decision myself.

10. I also did not know what the tax consequences (after-tax amount) of my deal, which is a normal precaution in any business deal, and I have an MBA and I would have tried to get my CPA to evaluate what this deal would net me after taxes.

4

11. The alleged oral agreement of November 4, 2010 did not allow me 7 days after signing to revoke it, which I would find objectionable, and which the prior written agreement of June 2000 had, and which the alleged oral agreement of April 2007 was to have (and which USDJ Koeltl ruled should have been in the written agreement).

12. The contract was for a lump sum of $285,000, with amounts paid out to lawyers, but if I were to default, I would not only pay back my $125,000, but I would have to pay back the full $285,000. This makes no sense, and is certainly an onerous burden that if I breach the agreement, I have to pay back more than I got. And if Amex broke the agreement, there would be no penalty. My lawyers did not point this out to me, even now.

13. The alleged oral contract was still being debated for the period from 6:30pm to 8pm, which is a long time – in fact equal to what I originally wanted the entire mediation to be. Thus, when Magistrate Judge Katz left the mediation at 6:30pm, there was no impartial person to observe me, as Your Honor pointed out.   As each passing minute went by, I became less able to focus and attend to details of the alleged oral contract. I note that even an impartial observer might not be able to distinguish the effects of the wearing off of Ritalin, which started at about 4pm or so. Sometimes police use methods to tell if someone is drunk, which is a relatively well observed phenomenon, and even then use a breath meter and several oral and movement tests (recite the alphabet without singing it, count backwards; walk a straight line, touch your nose with one finger); as opposed to the wearing off of Ritalin, which is difficult to observe. As best I know, there is no known test to do that, except that two years of taking Ritalin each 4 hours, and which I have an alarm set for every single weekday at 11:55am to remind me, and I don't take it on weekends, means that even something as regular as that, I don't trust myself for such self-observation.

14. Both Russell Moriarity and Matt Blit were instructed both in writing and in verbally on the day of the mediation and in the car riding over to the Court that the mediation should be stopped after 1-2 hours. Neither objected nor qualified their agreement to that, and I did not have my cell phone to remind me to stop the mediation nor to take the spare Ritalin I carry with me. Essentially, my safeguards were removed, and that includes my cell phone alarm, my lawyers who were ostensibly looking out for my best interests, but instead were focused on making a quick buck (or $100,000) regardless of my wishes to go to trial if the deal did not meet over $350,000 after taxes.

15. I also instructed both lawyers Matt Blit and Russell Moriarity to speak for me, since I did not wish to speak, and that (I am not sure of this point: ) Amex is only having their lawyers speak, so that I as a layman should not speak. This was violated many times. Moreover, on several times, Matt would act against my interest by asking me to talk to His Honor Magistrate Judge Katz, and then compounded it by arguing against my position in front of His Honor. Sometimes Matt spoke with dubious validity against my statements whilst I spoke to His Honor MJ Katz, since Mr. Blit did not cite precedent or law, and Matt also did not challenge His Honor MJ Katz's recollection of the April 2007 mediation transcript (still sealed, but which Levine & Blit has had and presumably read for several months) and other documents where MJ Katz stipulated that I could not

5

contact the SEC, but MJ Katz must have forgotten (a judge is not perfect, and could have been gently corrected on such matters of fact). *by my lawyer rather than by me (PMK)*

16. I asked to leave the mediation after Amex's offer that was too low, and if I recall right, both Matt and Bob Ellenport said that I could not just leave.

17. I was told by the Confidential Informant that Matt had asked him whether he could influence me to take the deal. I am not sure if both of them or just one of them said I could not leave, but had to make a counter-offer. This is another example of where I was not thinking clearly due to the Ritalin wearing off.

18. I also did not know what the value of the proposed alleged oral agreement would be worth in after tax dollars to me, which is a standard precaution, as I have a finance degree (MBA from MIT with a concentration in Finance and Management Information Systems) and I have a CPA do my taxes for the past several years. Only in an impaired state of mind would I sign a document of tens of thousands or hundreds of thousands of dollars, and not have a tax lawyer tell me what I would net.

19. Additional proof that I was of impaired intellect was that the alleged oral agreement gave to me an amount, let's arbitrarily say is $300,000. I could say $30,000, or $3million, but I just wish to show the inequity of the terms. If my lawyer gets one-third of $300,000, then I would have $200,000 remaining, of which some tens of thousands of dollars would go to Mr. Ellenport, Esq, thus leaving me, say, $180,000. And if I am taxed in the 1/3 tax bracket, then I would get $120,000 after taxes. However, if I were to transgress the agreement, I would have to pay Amex $300,000, even though I received only $120,000. Moreover, there is no penalty for Amex breaking the agreement, and both Qing and Amex have already admitted not only did Qing breach the agreement in April 2005, but also that the General Counsel's Office was aware of that in February 2006 and did nothing about it. I should not sign an agreement with Amex that puts the onus on me if the contract is breached, and no penalty for them if they **once again** breach the agreement. In fact, I had such a stipulation even in the April 2007 alleged oral agreement which was overturned by USDJ Koeltl as not being in existence due to violating all 4 of the Winston / Ciaramella rules.

20. I instructed my lawyers to hand Your Honor two documents, which they debated in the Court Room 26B, prior to entering Your Honor's chambers, and they said that ethics would commit them to give the two documents of my psychiatrist's assessment of 2 pages and my 3 page summary of the case. Matt Blit turned over neither, and I was only able to turn over the psychiatrist's assessment. This is a violation of due process.

    a. As noted above, Mr. Pery Krinsky, Esq. was present in discussions between me and Matt Blit.

6

    b.  Mr. Krinsky was instrumental in overriding Mr. Blit's refusal to give those 2 documents to Your Honor.  This is memorialized in the sworn affidavit[3] of xxxxx the Government Confidential Informant [TR 3 line 17 to TR 4 line 21]

    c.  Mr. Levine tacitly acknowledges that Matt did not give the documents to Your Honor, even though he gave it to Ms. Park by writing in an email to me of "Tuesday, November 23, 2010 12:25 PM" that:

        i.  "3]  As regards your item "A", I believe that Matt did provide the two documents you reference to Ms. Park.  The judge did in fact peruse the unsigned doucument purported to be a letter written by Dr. Newmark, and stated on the record that he did so.  He further stated that he gave said document very little weigth, preferring to place considerable weight to the evaluations of those who were actually present at the settlement hearing.  As to the other item, you attempted to hand that document to the judge; he refused to accept it.  You should have read it to the  judge when he gave you the opportunity to speak.  Had you done so, it would have become part of the record."  [typos not corrected]

        ii.  This indicates that both what I affirmed in this deposition is true as to giving them to Levine & Blit, and acknowledging that they had started the process by first giving the adversary both documents, and then forgetting or purposely not submitting such documents to the Court, presumably to limit the evidence in this case, upon which Your Honor would have relied upon.

21.  The person (whose name I have redacted) at the hearing is a Confidential Informant for the Government's Law Enforcement Officers.  He witnessed[4], the glance between Ms. Park and Mr. Blit, and saw Mr. Blit laugh out loud at me (in my face, so to speak) while I spoke to Your Honor.  When I entered that comment into the record, Mr. Blit whom Your Honor had sworn to tell the truth, then said that he coughed and did not laugh.  Thus, Mr. Blit both committed perjury, had "intent to deceive" the Court (a criminal misdemeanor in NY State and in SDNY under Local Rule 1.5) and also Contempt of Court.  NY Judiciary §487 on "intent to deceive" the Court occurs whether or not the lawyer is successful in their "intent to deceive" the Court – in this case Matt was successful.  *Amalfitano v. Rosenberg* July  14 2009 06-2364-cv, US Second Circuit Court of Appeals [Walker, Calabresi, and Sack, Circuit Judges] – See excerpt in Attachment 1.

22.  It may be questioned why Mr. Matt Blit would ask that I be under oath, and that he be excused from being under oath – my conjecture is based upon conversations and emails I had with Matt over the past few weeks. In those conversations, Matt gave multiple reasons why I should accept the deal and why my stance was wrong; I hereby present two of them:

---

[3] There are two copies provided, one of which is redacted to protect his/her name.
[4] See Attachment B.

06cv3834 *Lindner v Amex & Qing Lin*, an oral agreement is not binding unless it meets 4 conditions, including partial fulfillment, and also that such terms are not usually done in writing.

e.  That Matt had insisted that anytime a deal is agreed upon, it becomes binding and he can leave.

  i.  Mr. Blit however knows (!) that the contract pertaining to that actually specifies the opposite, since it only applies when I give up the right to review the contract and delegate it solely to Matt. This is codified in (I believe) paragraph "6. Settlement. The firm shall settle claims only with the Client's written consent. However, if Client gives the Firm written consent to settle a matter and the Firm settles the matter, the Client may be bound by that agreement even before Client signs a formal written settlement agreement." This is clearly not the case, since I have not signed a "written agreement" to the Firm consenting for them to "settle a matter", since I was there in person, and wanted to check everything for myself, and I specifically requested that the negotiations do not go on longer than 1-2 hours. I have a friend who is diabetic, and is regimented about his life for the past 40 years in terms of when to medicate. I however have been taking my medication only for the past two years, and I rely upon my cell phone and unfortunately upon my 2 lawyers to inform me when that time has passed, and they both failed me in that regard, and made light of my disability.

  ii.  I do not have the "standard" contract Mr. Blit uses, but from my memory I recall that it said that any agreement would end Levine & Blit's employment and do so for good cause. I had objected to that by telling Matt that if he were to settle for $100, then I would have to accept and Matt would for "good cause" no longer be my lawyer. On the basis of my objection, that language was removed.

  iii.  I did find a copy of 2 drafts of Matt's "Retainer Agreement" and have attached an enlarged photo of them in Attachment 3.

    1.  dated "3/5/2010 3:30pm", where on page 3, paragraph 8 "**Withdrawal by the Firm**" [emphasis in the original], subsection (7) was excised and said: "(7)Client's unreasonable failure to

---

(1) whether there has been express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing.

concur with attorneys' judgment or recommendation regarding the value of the case or with the Firm's management of the case"

2. dated "3/5/2010 4:15pm", where on page 3, paragraph 8 "**Withdrawal by the Firm**" [emphasis in the original], subsection (7) was excised and said: "(7)Client's unreasonable failure to concur with attorneys' ~~judgment or recommendation regarding the value of the case or with the Firm's~~ management of the case" [where the crossed out words(~~crossed out~~) represent the omission]

23. Thus, I have my own observation under oath, and that of a Confidential Informant confirming it under sworn affidavit while Matt denied it, and we have not heard from Ms. Park whether she did exchange glances with Matt and then heard Matt laugh, in contradiction to what Matt then proclaimed. Mr. Krinsky and Ms. Park are both Officers of the Court, and should be compelled to give their account, and perhaps should have volunteered on the spot to have alerted Your Honor to the truth of my statement and the falsity of Matt's, especially after the Confidential Informant made his account known.

24. Also, Levine & Blit, in violation of NY Bar Ethics and of SDNY Local Rule 1.5 did give legal advice to Mr. Lindner. Moreover,

   a. that legal advice was that the case is over, as of Nov 18, 2010, when in fact it is not over since it is appealable in one or more ways in my opinion.

   b. Mr. Levine wrote in an email of "Tuesday, November 23, 2010 12:25 PM" that "4] Your allegations as to anyone's responsibility to comment on Matt's supposed "laughing" are baseless, as are your allegations that Mr. Krinsky lied to you about his representation."

      i. First of all, Mr. Levine was not present when Mr. Krinsky lied to me before anyone else but Mr. Krinsky and me and my (later to be) witness, so his testimony can be disregarded as supposition or hearsay.

      ii. Secondly, I swear or affirm that I did ask Mr. Krinsky if he was connect with this case, and Mr. Krinsky denied that he was. Later when Mr. Krinsky was identified as representing Levine & Blit, I brought that to Mr. Krinsky's attention as not telling the truth (words to that effect) and Mr. Krinsky replied that he was using an abundance of caution (or words to that effect), which is a strange characterization for an "ethics" attorney. A more accurate statement Mr. Krinsky could have made previously when I asked would be: "I'd rather not say who I am or am not representing or her for" or "No comment."

   c. I noted that to Levine & Blit in an email of "Tuesday, November 23, 2010 3:27 PM" in which I wrote: "And also, I think you ought to stop giving legal advice, especially if you are mistaken." Mr. Krinsky, Esq. was copied on that also.

    d.  that in an email on "Tuesday, November 23, 2010 4:09 PM" Mr. Levine, Esq. did deny that by falsely saying " 1] Levine & Blit has given you no legal advice since your case was closed by Judge Griesa, nor will we in the future."

25. Given that situation, I ask that Ms. Park and Mr. Krinsky should give a full accounting of what happened, and that should they not tell the whole truth and nothing but the truth, they should be liable under the laws for perjury, among other such laws. Additionally, Matt's partner Leslie Levine should be compelled to give his account, or be allowed to plead the 5th Amendment. I remind Your Honor that it was Mr. Blit who insisted on swearing me in, at which point I asked that the other lawyers be sworn in, over Mr. Blit's objection that lawyers are presumed to tell the truth. I think we found the reason why Mr. Blit's objection was not valid.

By: _____ Dated: New York, NY on Sunday, December 5, 2010

                                                     4:12 pm

Peter W. Lindner, Plaintiff
1 Irving Place, Apt. G-23-C
New York, New York 10003

cc: Via email, fax &/or USPS
- The Honorable USDJ Griesa, US District Court SDNY
- Levine & Blit, Esq., representing themselves
- Jean Park, Esq. of KDW, representing American Express and also a witness
- Pery Krinsky, Esq. – witness and alleged ethics attorney to Levine & Blit
- ██████████ – witness  name redacted but known to the parties and to The Court
- Russell Moriarity,Esq. witness



SUBSCRIBED AND SWORN TO BEFORE ME THIS _5TH_ DAY OF _DECEMBER_ 2010 BY _PETER LINDNER_

NOTARY PUBLIC  12|05|2010

JOHN POPESCU
Notary Public - State of New York
NO. 01PO6142750
Qualified in Bronx County
My Commission Expires 3-20-2014

11

## Attachment A:  Amalfitano v. Rosenberg July 14 2009 062364pv3

This shows that an unsuccessful attempt to deceive the Court was / is still a crime un NY Jud
Law §487:

7          On July 15, 2008, we certified two questions to the New

8     York State Court of Appeals:

9          (1) Can a successful lawsuit for treble
10         damages brought under N.Y. Jud. Law § 487 be
11         based on an attempted but unsuccessful deceit
12         upon a court by the defendant?

13         (2) In the course of such a lawsuit, may the
14         costs of defending litigation instituted by a
15         complaint containing a material
16         misrepresentation of fact be treated as the
17         proximate result of the misrepresentation if
18         the court upon which the deceit was attempted
19         at no time acted on the belief that the
20         misrepresentation was true?

21    Amalfitano v. Rosenberg, 533 F.3d 117, 126 (2d Cir. 2008).  We

22    noted that we "would almost surely affirm the district court's

23    judgment in its entirety if the New York Court of Appeals

24    determines that section 487 permits the award of treble damages

25    for an attempted deceit of the New York courts." Id.  The Court

26    of Appeals has now answered both certified questions in the

27    affirmative, see Amalfitano v. Rosenberg, 12 N.Y.3d 8, 903 N.E.2d

28    265, 874 N.Y.S.2d 868 (2009), and, in light of that decision, we

29    do indeed affirm.

And this shows the beginning of the opinion, that it was decided by the US Second Circuit Court of Appeals, and thus has jurisdiction over SDNY:

```
06-2364-cv
Amalfitano v. Rosenberg
```

1          UNITED STATES COURT OF APPEALS

2              FOR THE SECOND CIRCUIT

3                 August Term, 2007

4    (Argued:  September 6, 2007          Decided: July 14, 2009)

5                 Docket No. 06-2364-cv

6         ------------------------------------

7       VIVIA AMALFITANO AND GERARD AMALFITANO,

8                Plaintiffs-Appellees,

9                     - v. -

10               ARMAND ROSENBERG,

11              Defendant-Appellant.

12        ------------------------------------

13   Before:   WALKER, CALABRESI, and SACK, Circuit Judges.

14          Appeal from a judgment of the United States District

15   Court for the Southern District of New York (Naomi Reice

16   Buchwald, Judge).  We certified two questions to the New York

17   Court of Appeals, see Amalfitano v. Rosenberg, 533 F.3d 117, 126

18   (2d Cir. 2008), which it has now answered, see Amalfitano v.

19   Rosenberg, 12 N.Y.3d 8, 903 N.E.2d 265, 874 N.Y.S.2d 868 (2009).

20   In light of those answers, the judgment is:

21          Affirmed.

22                         WILLIAM J. DAVIS, Scheichet & Davis,
23                         P.C., New York, NY, for Defendant-
24                         Appellant.

25                         RICHARD E. HAHN, Llorca & Hahn LLP, New
26                         York, NY, for Plaintiffs-Appellees.

13

**Attachment B:  Redacted sworn testimony of witness and Government CI (Confidential Informant) corroborating perjury of Matt Blit, Esq. (after Mr. Blit was sworn in)**

This testimony was under oath, without Plaintiff Lindner present, and a signed original and copy exists with the Notary / Court Stenographer Angelike E. Cacchiani.
(spaces and two columns edited to fit paper, and name of person testifying is redacted, but available to both The Court and the Parties, who are all lawyers, with the exception of pro se litigant Plaintiff Peter Lindner).  Signatures are photographed and are in box entitled "Figure 1 for Attachment B"



```
1                          1
2    -----------------------------------X
3
4    TESTIMONY OF
5    ██████████████
6
7    -----------------------------------X
8
9      1 Irving Place
       New York, New York
10
11     November 30, 2010
       10:58 a.m.
12
13
14     SWORN STATEMENT by ██████████████ ,
15       held at the above-mentioned time and place,
16       before Angelike E. Cacchiani, Notary Public
17       of the State of New York.
18
19
20
21
22
23
24
25

FEVOLA REPORTING & TRANSCRIPTION INC
(631) 724-7576
```

```
1                          2
2    A P P E A R A N C E S :
3    ██████████
4      1 Irving Place
       New York, New York, 10003
5    (Photo ID provided)
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1    Statement    3
2    THE COURT REPORTER:  Mr.
3    -- Am I pronouncing your
4    name correctly?
```

14

5 ███: █.
6 THE COURT REPORTER:  Mr.
7 , please raise your right
8 hand.  Do you solemnly swear or
9 affirm that the testimony you are
10 about to give is the truth, the
11 whole truth and nothing but the
12 truth?
13 ███: Absolutely.
14 Yes.
15 THE COURT REPORTER:  You may
16 proceed.
17 ███: On Thursday
18 morning Pete was arguing with Matt
19 Blit and his other attorneys, Les
20 Levine, Russell Moriarty and Perry
21 Krinsky about documents.  Peter won
22 the arguments.
23 One was two pages from doctor,
24 how Ritalin affects Peter; the
25 other, Peter's statement to the

1    Statement    4
2 Judge.  Matt Blit says, "I advise
3 you against it."
4 They discussed amongst
5 themselves, ethics attorney, Perry
6 Krinsky, and changed their decision
7 and agreed with Pete, and tall
8 red-head Russell, and Lesley Levine.
9 They agreed that Pete was right, and
10 then Peter handed them the
11 documents.
12 Pete made a mistake by putting
13 Page 1 stapled to Page 1.  Peter
14 corrected it.  Then Peter got two
15 pages stapled together and Pete went
16 into his file and got the other set
17 and gave it to him.  Matt Blit and
18 then Pete gave it to them to give to
19 the Judge.  I said, "You out-argued
20 them."  Pete said, "Aren't you
21 impressed?"  I said, "Very."
22 Peter Lindner walked up to the
23 front of the courtroom where there
24 was a black man with a beard sitting
25 next to a female who turned out to

1    Statement    5
2 be the court reporter, and Matt Blit
3 said, "Can you do something here?
4 Pete is crazy."  I said, "I want him
5 to take the deal but Pete's a grown
6 man."  Matt Blit said, "It would
7 benefit you if you can convince
8 Pete."  Peter was walking back over
9 towards me and that was the end of
10 the conversation.
11 When word got back to Matt Blit
12 that I was going -- going -- going
13 into the hearing, Matt Blit said to
14 me, "He's crazy bringing you in here
15 as a witness."
16 In the courtroom, Matt Blit
17 asked Peter to be sworn in.  Peter
18 said everyone else be sworn in.  The
19 Judge swore everyone in; Jean Park;
20 the tall red-haired guy, Russell;
21 Matt Blit; Leslie; Pete and that's
22 it.
23 After everyone was sworn in --
24 After everyone was sworn in, I
25 specifically saw Jean Park make eye

1    Statement    6
2 contact with Matt Blit who was
3 turned around toward -- looking at
4 her.  He bursted out with a laugh
5 and a smile.  Peter said, "I'd like
6 the record to show that Matt
7 laughed."  Matt replied, "I
8 coughed."
9 I was shocked because he lied
10 under oath, and I looked up to him
11 as an attorney and he lied under
12 oath, and I swear to that.  I'm a
13 40-year-old man and I know the
14 difference between a laugh and a
15 cough.  I was just disappointed.  I
16 looked up to him.
17 I then took a pen from Pete to
18 write down that Matt lied while
19 under oath.  Peter thought I was
20 fiddling and took the pen away from

21 me.  When we breaked, I told Pete in
22 the bathroom Matt had lied under
23 oath and that he, in deed, laughed
24 and did not cough.  And I'm
25 completely sure of that.  And I told

1     Statement    7
2 that Matt and Jean Park glanced at
3 each other and Matt had bursted out
4 with a laugh.
5 When Peter Lindner talked, Jean
6 Park would casually look over at
7 Matt Blit and roll her eyes.  Like,
8 she had her legs crossed and arms
9 crossed, leaning over with this and
10 kept rolling her eyes at Matt Blit.
11 But I'd like to make another
12 statement that before this incident,
13 that Jean Park and Matt Blit had
14 been making eye contact numerous
15 times, and that's what I can
16 consider signals.
17 Jean Park was nodding her head
18 in certain directions to Matt Blit,
19 and he would put his hands up and
20 shrug his shoulders or just put both
21 his hands up with palms of his hands
22 facing the ceiling with the
23 impression like, what can I do.
24 Peter brought it to the
25 attention of the Judge and the Judge

1     Statement    8
2 goes, this is childish, or laughing
3 is childish, or something like that
4 and didn't have too much of a
5 reaction to what Pete said.
6 At that point, Jean Park and
7 Matt Blit acted professionally and
8 stopped making eye contact to the
9 end of the hearing.
10 But I would also like to make
11 another point that the Judge thought
12 it was childish to be laughing, but
13 to lie under oath is not childish.
14 It is a federal matter and some have

15 lied under oath and gotten jail
16 time.
17 I was also instructed as a CI,
18 which is a confidential informant,
19 if you lie under oath, it can be a
20 penalty by jail.
21 For the record, I have been a
22 confidential informant in other
23 numerous agencies and never have I
24 lied under oath because that could
25 ruin my 20 years of credibility as

1     Statement    9
2 an informant.  And I wouldn't lie
3 under oath now 'cause if I get
4 caught I would be deactivated.
5 Today is Tuesday, the 30th,
6 November, 2010.
7 (Time noted:  11:03 a.m.)
8
9
10

11
12
13 Subscribed and sworn to before me
14 this ___ day of _____, 2010.
15
16
17

18 NOTARY PUBLIC
19
20



**Figure 1 for Attachment B**

16

FEVOLA REPORTING & TRANSCRIPTION
INC (631) 724-7576

```
 1      10
 2 CERTIFICATION
 3 I, Angelike E. Cacchiani, a Notary
 4     Public in and for the State of New York, do
hereby
 5     Certify:
 6 THAT the witness whose testimony is herein
 7     before set forth, was duly sworn by me; and
 8 THAT the within transcript is a true record
 9     of the testimony given by said witness.
10 I further certify that I am not related,
11     either by blood or marriage, to any of the
parties
12     to this action; and
13 THAT I am in no way interested in
14     the outcome of this matter.
15 IN WITNESS WHEREOF, I have hereunto
16     set my hand this 30th day of November,
2010.
17
18
19 _____
20 ANGELIKE E. CACCHIANI
21
22
23
24
25
```

FEVOLA REPORTING & TRANSCRIPTION INC
(631) 724-7576

**Attachment 3:  Evolution of Retainer Agreement to remove the value of a case from "Withdrawal by the Firm … for good cause."**

There are 4 photos:
- 1a: Retainer draft of 3:30pm on 3/5/2010 – Peter objects to "value of the case"
- 1b: Retainer draft of 3:30pm on 3/5/2010 – paragraph 8 section 7 where that phrase is used
- 2a: Retainer draft of 4:15pm on 3/5/2010 – Peter agrees now that "value of the case" is deleted in paragraph 7 (previously #8) section 7  where that phrase was used
- 2b: Retainer draft of 4:15pm on 3/5/2010– paragraph 7 section 7 where that phrase is removed

In this progression, the phrase "the value of the case" is removed as a reason for "withdraw from the representation for good cause", which is under the paragraph #8 (later as paragraph #7) entitled:
"8.  **Withdrawal by the Firm.**" [emphasis in the original]

The reason for this was that Peter did not want Blit to low-ball the value of the case, which I believe I said was $100 for example, and then resign for ostensible "good cause."  However, Matt Blit in November 2010 then invoked this paragraph as a reason to pull out.  When I pointed out this was wrong, then Mr. Blit referred to paragraph 6, which is dealt with in the body of this affidavit.

1a: Retainer draft of 3:30pm on 3/5/2010 – Peter objects to "value of the case"



2a: Retainer draft of 4:15pm on 3/5/2010 – Peter agrees now that "value of the case" is deleted in paragraph 7 (previously #8) section 7  where that phrase was used



18

1b: Retainer draft of 3:30pm on 3/5/2010 – paragraph 8 section 7 where that phrase is used



2b: Retainer draft of 4:15pm on 3/5/2010– paragraph 7 section 7 where that phrase is removed



19

**Attachment 4:**

Wednesday, November 17, 2010 4:48:41 PM

Your Honor, I have a 7minute statement.

There are 3 or 4 things I want to say:

1) I tried to settle with American Express back in June 2000 and avoid court. American Express and the Chinese born immigrant Qing Lin violated that contract. I would think that a contract should be held sacred by the signers, who include two people Ash Gupta and Qing Lin who work at American Express. But these two people did not respect the American system of contracts and in 2005 broke that bond between us, and covered it up.

2) I was impaired from lack of food/water/medicine as attested to by the only knowledgeable witness/person: that of my Doctor who is a psychiatrist and wrote the prescription for my Ritalin for over two years. American Express was aware of that as they had my medical file and ORDERed me to see their own psychiatrist. I am handicapped with Attention Deficit Hyperactivity Disorder and told my lawyers that, as well as provided proof from my psychiatrist who prescribed my medicine. There are no other affidavits, and Magistrate Judge Katz was not present when we allegedly reached an agreement on a new contract. Thus, I wish to go to trial.

3) Yet my own lawyers gave false reasons (two different reasons) for why they did not want to go to trial. I think Levine and Blit are motivated by collecting the tens of thousands of dollars immediately, instead of going to trial as they repeatedly said was solely my choice, and not theirs. Levine and Blit agreed if I passed Summary Judgment, I would pay them tens of thousands of dollars immediately, which I did, and after that, they would go to trial with their work paid later for about one third of the settlement, with them risking being paid **nothing** if we lose. We would split expenses. These are the two reasons my lawyers Levine and Blit gave are:

   a. Levine and Blit assert I was not impaired. I have that doctor's statement here, which says that my ability was impaired, which my

1

lawyer mocked even before he saw it. I did not have food/water/medicine for 6 hours, and I specifically take my medicine after 3-5 hours. I took medicine this morning at 7am, and will do so again in less than 1 hour. And I specifically instructed my lawyer on that very point. I did not get to carry my cell phone with its alarm in the court room, which I have set to take my medicine at the same time every day.

b. Also, my lawyer wrongly said he was leaving with good cause, when in fact the paragraph he speaks of is very specific and is only if he alone is designated to sign a contract, as opposed to me signing anything. His normal paragraph says if he reaches a settlement, then that is the end of his services, and I objected, saying that if he settles for say $100, then he could say that is the end, but I wouldn't want it. So, he modified it to say that if I delegate the settlement to him, and he settles, I'd have to accept it. But I did not delegate it to him, and remained there all the time.

Finally: Of course American Express wants to get out of this, which I have as 7 reasons, but clearly they want to pay a smaller amount than the issue is worth and don't want the bad publicity that in 2005 American Express violated a contract signed by their Banking President Ash Gupta and me in June 2000.

[Omit these BOLD prints unless USDJ Griesa says to:]
**Those reasons are:**
1. **it is a low settlement,**
2. **they don't want to go to trial and expose that their Vice President Qing Lin did retaliate under Title VII of the Civil Rights law in 2005, and denied it until 4 years later in 2009 when deposed under oath, and**
3. **that American Express' Vice President in the General Counsel's Office as a lawyer did know in 2006 of Qing's contract violation, and also covered it up for 3 years, and**

4. under which conditions Qing left, since it was two weeks after I gave a speech on this at American Express' 2009 Annual Shareholder Meeting.

5. In 2007, American Express even stopped me from filing with the Securities and Exchange Commission, as is my right as an American Express Shareholder of tens of thousands of dollars.

6. So, American Express is fighting both
   a. to stop their Shareholders from knowing what happened, which is what the Securities and Exchange Commission's rules and laws are all about: full disclosure, and
   b. American Express does not want the trial where additionally their top Executive Officers may be shown to have violated those SEC principles, possible another legal violation.

7. And American Express wants me to release them from things both known and unknown, which makes me realize my other allegations which were dropped from this suit are now known to them.

To conclude:  A person who emigrated to the USA from China did conspire to breach a contract signed in good faith by me and by his manager (Ash Gupta) and by American Express, which is a good company of over 100 years old.

We should not let them escape American Justice where we go to trial for such flagrant violations of contract and of law, and where even the American Express' General Counsel's Office sought to hide this contract violation for 3 years.

If Your Honor believes in Contracts, and to keep the Government out of private deals, then American Express and Qing Lin should be brought to trial, and the law firm of Levine & Blit should not be able to pretend that I was lying in order to break my legal retainer – a Contract!—with them to go to trial, when in fact I have proof of my medical condition and they have no counter proof.

3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - X

PETER W. LINDNER,

                              Plaintiff,

             -against-

AMERICAN EXPRESS CORPORATION and
QING LIN

                              Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - X

THE HONORABLE USDJ GRIESA

06 Civ. 3834 (JGK)

AFFIRMATION OF SERVICE

Date:  December 5, 2010

I, Peter W. Lindner, declare under penalty of perjury that I have served a copy of
the "Motion To Alter Or Amend A Judgment" upon a)  Jean Park  b) Robert S. Ellenport, Esq.
c) Matt Blit, Esq. d)The Honorable USDJ Griesa e) The Honorable MJ Katz f) Confidential
Informant (when available- letter left with doorman or delivered by hand) g) *Omer Salik (PWL)*
whose addresses are:                                                *Omer Salik (via fax, USPS, and/or email)*

Ms. Jean Park, Esq.
Kelley Drye & Warren LLP
101 Park Ave.
NY, NY  10178-0002
Office: 212-808-7826
Fax:    212-808-7897

Matt Blit
350 Fifth Avenue, 36th Floor
NY, NY 10118
Phone: 212-967-3000
Fax:    212-967-3010
mblit@levineblit.com

Robert S. Ellenport
852 Lake Avenue
Clark, NJ 07036
Rse852@aol.com

Confidential Informant (via doorman or by
hand)

Honorable USDJ ~~Koeltl~~ *Griesa (PWL)*
Honorable MJ Katz
(and Pro Se Office)
US District Court SDNY
United States Courthouse
500 Pearl Street
New York, New York 10007-1312
USDJ Griesa Office    212-805-0210
MJ Katz Office:       212-805-0218
MJ Katz Fax:          212-805-7932
Pro Se Office phone:  212-805-0175

by hand, email, fax (and/or USPS).

By:  _[signature]_                              Dated: Sunday, December 5, 2010
       Peter W. Lindner                          New York, NY
       Plaintiff, *Pro Se*
1 Irving Place, Apt. G-23-C
New York, New York 10003
Home/ Fax:   212-979-9647
Cell:          917-207-4962

To the Pro Se Office:
Please time stamp the
extra original and send it
back to me.
Thanks,  Peter Lindner